**SCHUCHART & ASSOCIATES, PROFESSIONAL ENGINEERS, INC. et al.**

v.

**SOLO SERVE CORPORATION, et al.**

**Civ. A. No. SA–81–CA–5.**

United States District Court,
W. D. Texas,
San Antonio Division.

April 21, 1982.

Ted D. Lee, San Antonio, Tex., for plaintiffs.

Donald O. Ferguson, Gardner, Ferguson, Sommers & Dorr, San Antonio, Tex., for Travis-Braun & Associates, Inc.

R. Laurence Macon, Gale R. Peterson, Cox & Smith Inc., San Antonio, Tex., for Ingram Square Ltd., Bernard Lifschutz, Ted McWilliams and Texas Southwest Developers No. 1.

Thomas E. Quirk, Beckmann, Stanard & Olson, P. C., San Antonio, Tex., for Lance, Larcade and Bechtol.

Charles R. Shaddox, Shaddox, Gorham & Good, P. C., San Antonio, Tex., Harvey F. Cohen, Houston, Tex., for Solo Serve Corp.

## MEMORANDUM OPINION AND ORDER

SESSIONS, Chief Judge.

This case involves actions for conspiracy to infringe copyright, infringement of copyright, unfair competition, and unjust compensation. Plaintiffs, Schuchart and Associates, Professional Engineers, Inc., and Barry P. Middleman & Associates, Inc., bring this action against Defendants Solo Serve Corporation, Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, Individually and d/b/a Texas Southwest Developers No. 1, Lance, Larcade and Bechtol, and Travis-Braun & Associates, Inc. All Defendants have been served with summons and complaint and have filed answers in this cause. The Pre-Trial Order was entered by the United States Magistrate on March 12, 1982, and the parties are ready to proceed to trial pending the Court's ruling on Motions for Summary Judgment. The

following motions are before the Court and are the subject of this Memorandum Opinion and Order: (1) the Motion of Defendants Ingram Square, Ltd., Bernard Lifschutz and Ted McWilliams, Individually and d/b/a Texas Southwest Developers No. 1 to Dismiss or for Summary Judgment against Plaintiffs, Schuchart & Associates, Professional Engineers, Inc., and Barry P. Middleman & Associates, Inc.; (2) the Motion of Defendants Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, Individually and d/b/a Texas Southwest Developers No. 1 to Dismiss or for Summary Judgment against cross-claimants Travis-Braun & Associates, Inc.; and (3) the Motion of Lance, Larcade and Bechtol for Partial Summary Judgment against Plaintiffs Schuchart & Associates, Professional Engineers, Inc., and Barry P. Middleman & Associates, Inc. After careful consideration of the parties' motions and responses and the record in this case, the Court now enters the following Memorandum Opinion and Order disposing of the parties' motions.

## THE FACTUAL SETTING

The pleadings, depositions, affidavits, and answers to interrogatories on file in this cause establish the following. Defendant Solo Serve Corporation (Solo Serve) operates a number of department stores in the San Antonio, Texas area. In late 1979 or early 1980, Solo Serve entered into an agreement with Walzem Plaza Shopping Center Ltd. for the construction and leasing of a Solo Serve store in the Walzem Plaza Shopping Center (Walzem store). In connection with that agreement, Plaintiffs Schuchart & Associates, Professional Engineers, Inc. (Schuchart & Associates) and Barry P. Middleman & Associates, Inc. (Middleman & Associates) prepared original drawings and specifications for mechanical and electrical work and original architectural drawings and specifications. Schuchart & Associates, a professional engineering firm, prepared the "Walzem Plaza, Solo Serve architectural drawings and specifications for mechanical and electrical work" (mechanical and electrical drawings and specifications), for which Schuchart & Associates obtained copyright registration on September 2, 1980. Middleman & Associates prepared "Middleman architectural drawings and specifications for Walzem Plaza-Solo Serve Retail Store" (architectural drawings and specifications) for which Middleman obtained copyright registration on or about January 8, 1981.[1]

Subsequent to Solo Serve's involvement in the Walzem store project, Solo Serve entered into negotiations for the construction and lease of a Solo Serve store in the Ingram Square Shopping Center. On or about February 1980, Solo Serve began discussions with Ingram Square Ltd., a limited partnership, about the feasibility of including a Solo Serve store in the Ingram Square Shopping Center. At the time Solo Serve began discussions with Ingram Square Ltd., the partnership had already signed to the project two substantial tenants, Firestone Tire & Rubber Company and the General Cinema Corporation. Preliminary architectural drawings were already under way when Solo Serve and Ingram Square Ltd. began their feasibility discussions.

Ingram Square Ltd., a limited partnership is comprised of Texas Southwest Developers No. 1, the general partner, Kathleen Friesenhahn, and several individuals named Carr. The general partner, Texas Southwest Developers No. 1, is a partnership comprised of Defendants Bernard Lifschutz and Ted McWilliams, and a third individual named LaConney.[2] Texas Southwest Developers No. 1 has served as the developer and part-owner of the Ingram Square Shopping Center Project. Ingram Square Ltd. hired the architectural firm of Lance, Larcade & Bechtol to prepare the architectural drawings and specifications

---

**1.** There are four different categories of documents at issue in this suit:

(1) Architectural drawings prepared by Middleman & Associates;

(2) Architectural specifications prepared by Middleman & Associates;

(3) Electrical/mechanical drawings prepared by Schuchart & Associates; and

(4) Electrical/mechanical specifications prepared by Schuchart & Associates.

**2.** Neither LaConney, Friesenhahn, nor the Carrs are parties to this action.

for the Ingram Square Shopping Center Project. Travis-Braun & Associates (Travis-Braun) has served as the engineering firm on the project, developing the electrical and mechanical plans and specifications for the project.

Plaintiffs' Second Amended Complaint alleges three causes of action. First, in Count I, Plaintiffs charge infringement of copyright, alleging upon information belief that "Defendants have conspired to and have infringed said copyright by having copied, imitated or transcribed in whole or in part" Plaintiffs' drawings for the Solo Serve store in Walzem Plaza Shopping Center. (Second Amended Complaint, paragraph 19). Additionally, Plaintiffs charge that "after said copying, imitation, or transcription of the aforementioned drawings and specifications, Defendants have knowingly and willfully been continuing to copy, distribute and otherwise use the protected drawings and specifications and have thereby infringed the said copyrights of Plaintiffs Schuchart and Middleman." (Plaintiffs' Second Amended Complaint, paragraph 20). Second, in Count II, Plaintiffs charge unfair competition, alleging that "Defendants, through their agent or employees, in the course of conspiracy with other defendants, willfully and deceptively engaged in unfair competition practices in that the Defendants did not independently create, produce or distribute said architectural and engineering drawings and specifications, but sought to reap where they had not sown by deceptively and fraudulently utilizing the work product of Plaintiffs." (Plaintiffs' Second Amended Complaint, paragraph 26). Third, in Count III Plaintiffs charge that Defendants have been unjustly enriched by their wrongful copying, imitation, transcription and use of Plaintiffs' architectural drawings and specifications and electrical and mechanical drawings and specifications.

The depositions and answers to interrogatories on file establish the following history of the development of the Ingram Square Project. Sometime in 1978, the partnership of Texas Southwest Developers No. 1 approached the architectural firm of Lance, Larcade & Bechtol to provide architectural services on the development of the Ingram Square Shopping Center. Texas Southwest Developers No. 1 reached an oral agreement with Mike Lance of the Lance, Larcade & Bechtol architectural firm to provide basic architectural services at a cost of fifty-five cents ($.55) per square foot of gross, leasable area in the project. Lance hired the engineering firm of Travis-Braun to perform the engineering services on the project.

By late 1978, Ingram Square Ltd. had obtained executed leases for space in the project from two major tenants, Firestone Tire & Rubber Company and General Cinema Corporation. In early 1980, Defendant Ted McWilliams began preliminary discussions with Robert Grimm, president of Solo Serve, about Solo Serve's participation in the Ingram Square Project. Solo Serve expressed an interest in acquiring lease space in the shopping center for a department store of approximately thirty-six thousand (36,000) square feet. Several meetings were held in late February and early March of 1980 at which Ted McWilliams, Robert Grimm and Mike Lance were present. At the initial meeting, the participants discussed the feasibility of Solo Serve's inclusion in the project, since the project was already well under way. Following one of those meetings, in early March 1980, Robert Grimm delivered to architect Lance certain of the drawings prepared by Plaintiffs for Solo Serve's Walzem store. Grimm expressed to Lance Solo Serve's requirement that the layout, quality and construction of the Ingram Square store be substantially similar to the layout, quality, and construction of the Walzem Plaza store. The Walzem Plaza store drawings were to serve as a guideset in the preparation of drawings for the Ingram Square store. The deposition testimony of Mike Lance, Ted McWilliams, Bernard Lifschutz, and Robert Grimm establishes that neither McWilliams or Lifschutz were present when Grimm delivered the Walzem store plans to architect Lance. Moreover, there is no indication that Defendants Ingram Square Ltd., Texas Southwest Developers No. 1, McWilliams or Lifschutz participated in any discussions about

the details or preparation of the drawings or specifications for the Solo Serve store in the Ingram Square project.

Shortly after the series of initial meetings between Lance, Grimm and McWilliams, Lance prepared a preliminary sketch of the Ingram Square Solo Serve store. Solo Serve rejected the preliminary sketch as not sufficiently similar to the Walzem Store and Solo Serve's other existing stores.

Using the Schuchart and Middleman drawings provided by Grimm, which Grimm identified as drawings of Solo Serve's "standard store," and also relying on visits to the other existing Solo Serve stores, Lance prepared architectural drawings for the Ingram Square Solo Serve store that more closely approximated the design of the Walzem store. Sometime during the spring of 1980, before June 3, Lance furnished to the engineering firm of Travis-Braun & Associates, the engineering drawings and specifications drafted by Schuchart & Associates for the Walzem store. Travis-Braun was to prepare the electrical/mechanical drawings and specifications for the Ingram Square Store.

On April 15, 1980, Solo Serve Corporation executed a lease agreement with Texas Southwest Developers No. 1 for lease space in the Ingram Square Solo Serve Store. Sometime during the summer of 1980, before architect Lance formally issued the drawings for the Solo Serve store in Ingram Square on August 19, 1980, Solo Serve retained Middleman & Associates to review the plans and specifications for the Ingram Square store to assure that Solo Serve received the same quality and construction on both projects. Middleman & Associates served as a consultant to Solo Serve with respect to the drawings and specifications for the Ingram Square store. On or about August 1, 1980, an employee of Middleman & Associates showed the Ingram Square plans to Schuchart & Associates, at which time all Plaintiffs became aware that Plaintiffs' plans had been used.

Architect Lance conceded in his deposition that he had used Plaintiffs' drawings as a guide and that he photocopied approximately twenty (20) pages from Plaintiffs' plans in preparing the drawings for the Ingram Square Solo Serve store. At the time Lance so utilized the drawings, only one set of the documents that are the subject of this suit carried a notice of copyright. Of the four sets of documents, Schuchart's electrical/mechanical drawings, Schuchart's electrical/mechanical specifications, Middleman's architectural drawings, and Middleman's architectural specifications, only Schuchart's electrical/mechanical drawings carried a notice of copyright. On September 2, 1980, after Lance issued the drawings and specifications for the Ingram Square Solo Serve store, Plaintiff Schuchart & Associates obtained registration of copyright on the electrical/mechanical drawings and specifications. On January 8, 1982, two days after Plaintiffs filed their Original Complaint in this cause, Middleman obtained copyright registration on the architectural drawings and specifications.

## MOTION OF DEFENDANTS INGRAM SQUARE LTD., BERNARD LIFSCHUTZ AND TED McWILLIAMS, INDIVIDUALLY AND d/b/a TEXAS SOUTHWEST DEVELOPERS NO. 1 TO DISMISS OR FOR SUMMARY JUDGMENT

Defendants Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, Individually and d/b/a Texas Southwest Developers No. 1 (the Ingram Square Group) move to dismiss Plaintiffs' action against them pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim against Defendant upon which relief can be granted, or in the alternative, move for the entry of Summary Judgment, pursuant to Rule 56, Federal Rules of Civil Procedure, because there exists no genuine issue of material fact with respect to Plaintiffs' claims against Defendants. Because the parties have submitted and the Court has considered matters outside the pleadings, the Court shall treat Defendants' Motion as one for summary judgment pursuant to Rule 56, as required by Rule 12(b).

Technically, Defendants' Motion is before the Court for review of Defendants' objections to the Magistrate's denial of this Mo-

tion. The Court must make a de novo review of only those portions of the Magistrate's report to which Defendants object. 28 U.S.C. § 636(b)(1). However, as a practical matter, the Court must make a de novo review of Defendant's Motion in its entirety since the Magistrate summarily denied Defendants' Motion without discussion by Order of February 22, 1982. Because the Magistrate stated no reasons for his recommendation of denial, Defendants resubmitted as objections their Memorandum in Support of their Original Motion, thereby raising for the Court's consideration all of the grounds raised in their original motion.

The Ingram Square Group Defendants raise four grounds in support of their Motion for Summary Judgment. First, Defendants assert that the pleadings, depositions and answers to interrogatories on file, together with the various affidavits submitted by the parties on this Motion, show that there is no genuine issue as to any material fact, and that Defendants are entitled to judgment as a matter of law. In connection with this ground, Defendants assert that Plaintiffs have not properly pleaded a cause of action for civil conspiracy, and so cannot rely upon factual disputes relevant to a conspiracy claim in order to defeat Defendants' Motion for Summary Judgment. Also, Defendants argue that on the facts before the Court, Plaintiffs knew of the alleged infringement as early as August 1, 1980, prior to the issuance of drawings and specifications for the Ingram Square Solo Serve store, but took no action at that time to enforce their rights to copyright in the drawings and specifications. Accordingly, Defendants suggest that Plaintiffs are estopped as a matter of law from bringing this infringement action. As the second ground for Summary Judgment Defendants argue that 17 U.S.C. §§ 405(b) and 412 bar Plaintiffs' recovery of actual or statutory damages or of attorneys fees. Defendants urge that § 405(b) bars recovery because the architectural and electrical/mechanical drawings and specifications did not bear copyright notices. And even if Defendants committed any infringement of copyright, Defendants argue that no award of statutory damages or of attorney fees

can be made under § 412, because any infringement was of copyright in an unpublished work commenced before the effective date of its registration. Third, Defendants argue that Plaintiffs' cause of action for unfair competition is simply a common-law cause of action for misappropriation, which action has been preempted by the Copyright Act of 1976, 17 U.S.C. § 301. Finally, Defendants argue that Plaintiffs' cause of action for unjust enrichment is preempted by Section 301 and is not directed against the Defendants comprising the Ingram Square Group.

Defendants assert in their first ground in support of motion for summary judgment, that there exists no genuine issue of material fact with respect to Plaintiffs' allegation that the Ingram Square Group infringed any copyright Plaintiffs may have had in their drawings and specifications. Despite evidence that *someone* copied Plaintiffs' drawings or plans, there is no evidence in the record indicating that the Ingram Square Group Defendants committed any act of infringement.

Plaintiffs respond that there exist at least three genuine issues of fact material to Plaintiffs' conspiracy and infringement claims making summary judgment inappropriate. Plaintiffs first argue that the record in this case establishes a genuine issue of fact as to whether the Ingram Square Group Defendants *conspired* to infringe copyrights, unfairly compete, and to gain unjust enrichment to the detriment of Plaintiffs. Pointing out that proof of conspiracy must often be made by circumstantial evidence, Plaintiffs argue that a conspiracy can be inferred from Solo Serve's late entry into the Ingram Square project, the meetings between McWilliams, Grimm, and Lance at which drawings were exchanged, the conditioning of Solo Serve's participation upon the approval of plans on or before July 1, 1980, and the overall swiftness with which Solo Serve was integrated into a project that was already substantially in progress.

Second, Plaintiffs assert that there exists a genuine issue of material fact as to whether the Ingram Square Group had knowledge that Plaintiffs' plans and specifi-

cations were being utilized. Plaintiffs point to the deposition testimony of engineer Lon Travis that at a meeting in June of 1980, he commented to architect Lance that it was unusual to see a copyright notice marking on a set of plans.[3] Third, Plaintiffs argue that there exist genuine issues of fact as to whether the Ingram Square Group Defendants copied or caused to be copied Plaintiffs' works. Plaintiffs assert that this fact issue arises from the similarity between the Walzem store drawings and specifications, and the Ingram Square store drawings and specifications and Defendants' access to both drawings.

 As an initial matter, Defendants argue that the existence of any genuine issue of fact as to whether Defendants conspired to infringe copyrights is not an issue of *material* fact because Plaintiffs have not properly pleaded a cause of action for civil conspiracy. A cause of action for civil conspiracy to infringe copyright is not created by the Copyright Act, but rather is a state-created cause of action. See *Griese-Taylor Corp. v. First National Bank of Birmingham*, 572 F.2d 1039 (5th Cir. 1978). Under Texas law, an actionable civil conspiracy "is defined as 'a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means,' and it is said that 'the gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another and not the conspiracy itself.'" *Whedon v. Cravens*, 460 S.W.2d 278, 279 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.) (quoting *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968)); *International Bankers Life Insurance Company v. Holloway*, 368 S.W.2d 567, 581 (Tex.1963). Proof of civil conspiracy under Texas law may be made by circumstantial evidence, but facts establishing a conspiracy may not be proved by unreasonable inferences from other facts and circumstances. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d at 858.

Rule 8(a), Federal Rules of Civil Procedure, provides that a pleading setting forth a claim for relief shall contain "(1) a short and plain statement of the grounds upon which the Court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled." The purpose of the rule is to "give the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details." 5 Wright & Miller, Federal Practice and Procedure, § 1215, at pp. 109–112. The rule requires no more than that pleadings be simple, concise, and direct. Rule 8(e)(1).

 It appears to the Court that Plaintiffs' complaint for conspiracy is defective for several reasons. First, if Plaintiffs have intended to allege a state-created cause of action for civil conspiracy, they have done so by lumping that claim together with their federal claim for infringement of copyright into Count I of their Second Amended Complaint. In a single sentence in Count I, Plaintiffs charge that "Defendants have conspired to and have infringed said copyright...." Although Rule 8 requires no technical forms of pleading, different causes of action should be set forth in separate counts so as to adequately notify the opposing party of the nature of the lawsuit. See *Merrin Jewelry Co. v. St. Paul Fire and Marine Insurance Co.*, 301 F.Supp. 479, 481–82 (S.D.N.Y.1969); *Moffett v. Commerce Trust Co.*, 75 F.Supp. 303, 305 (W.D.Mo.1947). See also Rule 10(b), Fed.R. Civ.P. The gravamen of Plaintiffs' action is infringement of copyright. Indeed, Plaintiffs have characterized their claim as an action for infringement of copyright, not as an action for conspiracy, entitling Count I "Copyright Infringement."[4] Plaintiffs have carefully separated their different causes of action against multiple defend-

---

**3.** A notice of copyright appeared only upon electrical/mechanical drawings prepared by Schuchart & Associates. No other drawings or specifications bore copyright notice.

**4.** "In determining the nature of the claim plaintiff is asserting, plaintiff's characterization of his action normally will be acceptable to the

ants in this case into separate counts, putting Defendants on notice of claims for copyright infringement, unfair competition and unjust enrichment.[5] There is nothing inherent in these causes of action that would place Defendants on notice that Plaintiffs also intended to proceed against them under a civil conspiracy theory. The Court cannot conclude from the structure of Plaintiffs' Second Amended Complaint that Defendants were adequately placed on notice of Plaintiffs' conspiracy claims.

Second, Rule 8(f) requires that all pleadings shall be so construed as to do substantial justice. As Defendants point out in their reply to Plaintiffs' Opposition to Summary Judgment, Plaintiffs indicated for the first time in their response to motion for summary judgment, after the close of discovery, that they seek to hold the Ingram Square Group Defendants liable for a civil conspiracy. To the extent that Plaintiffs' defective pleadings might have been cured during the course of discovery, Plaintiffs' minimal responses to Defendants' Interrogatories seeking clarification of the specific acts committed by each Defendant failed to effect such cure.[6] Nor did the subsequent deposition discovery reveal to Defendants Plaintiffs' conspiracy theory. In the inter-

est of substantial justice, Plaintiffs' inadequate pleadings combined with the failure of discovery to disclose the conspiracy claim prevent this Court from concluding that Defendants were adequately placed on notice of Plaintiffs' conspiracy theory.[7]

■ Notwithstanding the Court's conclusion that Plaintiffs have not adequately alleged a cause of action for civil conspiracy under the law of the State of Texas, the Court finds on the record presented by the parties on Summary Judgment no genuine issue of fact material to Plaintiffs' conspiracy claim. Plaintiffs seek to establish the existence of . an issue of fact relevant to their theory of conspiracy to infringe copyright from the following: architect Lance, Grimm of Solo Serve and McWilliams met in February or March of 1980 to discuss the feasibility of including Solo Serve in the Ingram Square project. Shortly after that meeting Grimm delivered to Lance drawings and specifications prepared by Plaintiffs for the Walzem store; Defendants signed a lease with Solo Serve on April 15, 1980, conditioning their agreement upon the final approval of plans before July 1, 1980; at a meeting in June of 1980, engineer Travis remarked to architect Lance that it was unusual to see a notice of copyright on

Court." 5 Wright & Miller, Federal Practice and Procedure § 1324 at p. 469.

**5.** Plaintiffs have entitled the three counts in their Second Amended Complaint as "Copyright Infringement," "Unfair Competition," and "Unjust Enrichment."

**6.** That Defendants were not fully aware of Plaintiffs' conspiracy claims is evident in the interrogatories propounded by Ingram Square Ltd. and Texas Southwest Developers No. 1. The interrogatories were propounded to Schuchart & Associates and Middleman & Associates before Plaintiffs amended their complaint to allege a cause of action for unjust enrichment. Defendants propounded to both Plaintiffs interrogatories calling for enumeration of the specific acts of each defendant of copyright infringement and of unfair competition. Defendants asked no questions about conspiracy allegations. In response to Defendants' interrogatories, Plaintiff Middleman & Associates responded that it objected to the interrogatory as premature, stating "What specific acts each Defendant committed will be further revealed during Plaintiffs' discovery." Middleman & Associates further stated that Barry P. Middleman

had seen documents bearing the architectural seal of Lance, Larcade & Bechtol, which documents were substantial copies of Middleman & Associates' drawings. Middleman & Associates has never supplemented its response to those interrogatories. Plaintiff Schuchart & Associates tendered substantially similar responses to Defendants' interrogatories calling for specific acts.

**7.** In further support of this conclusion, there is authority for the proposition that complaints alleging conspiracy must include more detail than is demanded of other pleadings. See 5 Wright & Miller, Federal Practice and Procedure, § 1233 at p. 179. As indicated above, Plaintiffs' allegation of conspiracy is lumped together in the same sentence with the allegation of infringement of copyright as part of Plaintiffs' Count One entitled Copyright Infringement. If Plaintiffs' pleading of conspiracy does not meet ordinary requirements of pleading, then *a fortiori* it does not satisfy any heightened standard that may be applicable to complaints alleging conspiracy.

building plans; the total architectural and engineering package was completed by August of 1980, no more than seven months after Solo Serve first began discussions with Defendants. Plaintiffs argue that the above facts create an inference that Defendants Ingram Square Ltd., Texas Southwest Developers No. 1, Bernard Lifschutz and Ted McWilliams conspired with Solo Serve, the architectural firm, and the engineering firm to infringe Plaintiffs' drawing and specifications by copying them.

■ Rule 56(c) requires the Court to render judgment forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering a motion for summary judgment, the Court must resolve all doubt as to the existence of a genuine issue of material fact against the moving party. The Court may not assess the probative value of any of the evidence. *Gross v. Southern Railway Co.*, 414 F.2d 292, 297 (5th Cir. 1969). However, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is no genuine issue for trial. Rule 56(e). Moreover, "[a] pretended issue, one that no substantial evidence can be offered to maintain, is not genuine." *Southern Distributing Company, Inc. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978) (quoting *Firemen's Mutual Insurance Co. v. Aponaug Manufacturing Company*, 149 F.2d 359, 362 (5th Cir. 1945)).

Relying on *Alabama Farm Bureau Mutual Casualty Co. Inc. v. American Fidelity Life Insurance Co.*, 606 F.2d 602 (5th Cir. 1979), Plaintiffs argue that summary judgment is improper in this case because even if the basic facts are undisputed, the parties disagree about the permissible inferences that can be drawn from the basic facts. However, the inference for which Plaintiffs argue cannot permissibly be drawn from the facts they state in support of that inference.

The facts cited by Plaintiffs do not permit an inference that the Ingram Square Group Defendants reached an agreement or understanding with the other Defendants to intentionally commit the act of infringing Plaintiffs' copyrights. Indeed the deposition testimony cited by both parties uniformly reveals that Defendants Lifschutz and McWilliams were not present when Grimm delivered drawings to Lance, did not participate in discussions between Solo Serve, the architects and engineers, and did not participate in decisions relative to the development of drawings or specifications. Although there is evidence in the record that certain parties did in fact copy portions of Plaintiffs' drawings and specifications, there is no substantial evidence in the record sufficient to raise a genuine issue of material fact with respect to Plaintiffs' allegation of conspiracy against the Ingram Square Group. Thus, Defendants are entitled to judgment as a matter of law on Plaintiffs' allegation of conspiracy.

■ The second disputed fact issue asserted by Plaintiffs in opposition to summary judgment concerns Defendants' knowledge that Solo Serve, Lance and Travis-Braun copied Plaintiffs' drawings and specifications for use in the Ingram Square store. In support of the existence of this issue, Plaintiffs point to the deposition testimony of engineer Travis that at a meeting in June 1980, attended by McWilliams and Lifschutz, Travis remarked to the architect Lance that it was unusual to see a notice of copyright on a set of plans. However, Travis further testified that he never made further inquiry about the plans and never asked who owned them.[8] The testimony

---

8. Engineer Travis testified as follows:

[Mr. Lee] Now, I notice there's a copyright symbol on [the electrical/mechanical drawings]. Was that copyright symbol on there at the time that you received [the drawings]? [Mr. Travis] Yes.

Q. Did you ever make any inquiry as to whether or not [the drawings were] copyrighted? A. Only a comment to the architect that it was unusual to see such a marking on a set of plans.

cited by Plaintiffs, while it may raise a question of fact about Travis' knowledge that he was using copyrighted plans, does not create an issue of fact with respect to Lifschutz' and McWilliams' knowledge that the Plaintiffs' plans were being utilized. Although the issue of the knowledge by Defendants Ingram Square, Lifschutz and McWilliams that Plaintiffs' drawings and specifications were being used in the Ingram Square project might be material to the issues of conspiracy and actual or contributory infringement, the deposition testimony cited by Plaintiffs does not raise a genuine issue of fact with respect to their knowledge.

The third genuine issue of material fact posited by Plaintiffs in opposition to summary judgment is whether Defendants copied or caused to be copied Plaintiffs' drawings and specifications. Section 106 of the Copyright Act of 1976, 17 U.S.C. § 106, accords to the owner of a copyright the exclusive right to reproduce the copyrighted work in copies, to prepare derivative works based on the copyrighted work, and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending. Section 501(a) provides that anyone who violates any of the exclusive rights of the copyright owner, as provided in Section 106, is an infringer of the copyright.

In order to establish copyright infringement, a Plaintiff must prove (1) his ownership of a copyright and (2) that the Defendant "copied" Plaintiffs' work. *Ferguson v. National Broadcasting Company, Inc.*, 584 F.2d 111, 113 (5th Cir. 1978) (citing 3 M. Nimmer, Copyright §§ 13.01 and 13.02(A) (1978)). Additionally, a Defendant may be held liable as a contributory infringer if he acts with knowledge of copyright infringing activity to induce, cause, or materially contribute to the infringing conduct of another. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2nd Cir. 1971). See *Universal City Studios, Inc. v. Sony Corporation of America*, 659 F.2d 963, 975 (9th Cir. 1981).

Because there is ordinarily little or no direct evidence of copying, a plaintiff may prove this element by showing that the defendant had access to the copyrighted work and that the defendant's work is substantially similar to the plaintiff's work. *Ferguson v. National Broadcasting Company, Inc.*, 584 F.2d at 113 (citing 3 M. Nimmer, Copyright § 13.01[B] (1978)). Plaintiffs argue that the record in the case at bar shows that Defendants McWilliams and Lifschutz had access to Plaintiffs' plans and specifications, that the plans and specifications created by Lance, Larcade and Bechtol and Travis-Braun are substantially

Q. You made that comment to the architect?
A. That's right.
Q. And who did you make that comment to?
A. That would have been probably to Mr. Mike Lance.
Q. And when would you have made that?
A. The time we received the documents.
Q. And approximately when would that have been?
A. It would have been somewhere approximately June of 1980. I don't have an exact date. I would have to establish that from the files.
Q. Would it have been at the first meeting with Mr. Mike Lance?
A. On this particular phase of the project, yes.
Q. Where would that meeting have physically taken place?
A. Mr. Lance's office.

Q. And who would have been present?
A. Again, I am going from memory. Mr. Lance was there. I believe Mr. Bechtol was there. I believe possibly Mr. McWilliams, Mr. Grimm, Mr. Lifschutz, and I believe at that time I had probably Mr. Goodwin and Mr. Walker with me. Again, I am going from memory. There was one meeting that they all were present at. I believe it was at this particular meeting.
Q. And that would have been the meeting where you were furnished with [Schuchart & Associates' electrical/mechanical drawings]?
A. Yes.
Q. Did you ever make any further inquiry concerning [the drawings]?
A. No.
Q. Did you ever ask who owned them?
A. No.
Q. Did you ever talk to Mr. Schuchart or anyone in his organization?
A. No.

similar to the plans and specifications of Plaintiffs, and that therefore there exists a genuine issue of fact with respect to infringing activity by Defendants, Lifschutz, McWilliams, Ingram Square Ltd. and Texas Southwest Developers No. 1.

The Court finds missing a significant step in the logical progression of Plaintiffs' argument. Although copying may be established by proof of similarity and access by a defendant, this presumption applies only to works *created by the defendant*. There is no suggestion anywhere in the record in this case that Defendants McWilliams, Lifschutz, Ingram Square Ltd. or Texas Southwest Developers No. 1 created any plans or specifications for the Solo Serve store in Ingram Square Shopping Center. While this presumption may apply at trial to Defendants Lance, Larcade & Bechtol and Travis-Braun & Associates, it cannot be used to establish liability for infringement by the Ingram Square Group Defendants. Additionally, even if the Ingram Square Group Defendants can be charged with using plans that infringed the copyrights of Plaintiffs, the use of such plans cannot form the basis of infringement liability. Copyrighted architectural plans do not clothe their author with the exclusive right to construct the structure depicted in the drawings. *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 899 (5th Cir. 1972); *DeSilva Construction Corp. v. Herrald*, 213 F.Supp. 184, 196 (M.D.Fla.1962). Accordingly, the Court finds no genuine issues of material fact in dispute relevant to Plaintiffs' claims of conspiracy to infringe or infringement of copyright.

Defendants additionally argue that because as early as August 1, 1980, Plaintiffs were aware that Solo Serve, Lance, Larcade, and Bechtol, and Travis-Braun were utilizing Plaintiffs' drawings to prepare drawings and specifications for the Ingram Square store, Plaintiffs are now estopped from bringing this action for infringement because they did not immediately act upon their knowledge. Although Defendants have properly pleaded the affirmative defenses of latches and estoppel in accordance with Rule 8(c), Federal Rules of Civil Procedure, the estoppel defense provides no sup-

port to Defendants in their motion for summary judgment.

Defendants suggest that the infringement may have been avoided had Plaintiffs promptly acted on August 1, 1980, to enforce their copyright rights. Instead, Plaintiffs waited approximately five (5) months before bringing this lawsuit. In order to establish the estoppel defense to an action for infringement of copyright, Defendants must establish that Plaintiffs had knowledge of Defendants' infringing conduct and acted in a manner on which Defendants could reasonably rely in the course of their conduct. Also, Defendants must be ignorant of the true facts and must rely on Plaintiffs' conduct to their detriment. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.) *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); *Lottie Joplin Thomas Trust v. Crown Publishers*, 456 F.Supp. 531, 535 (S.D.N.Y.1977), *aff'd*, 592 F.2d 651 (2nd Cir. 1978). As Plaintiffs point out, the estoppel defense is not available to Defendants under the circumstances of this case because any infringement had already occurred by the time Plaintiffs became aware of such infringement; prior to that time there had been no conduct by Plaintiffs upon which Defendants could rely.

Turning to Defendants' second ground in support of motion for summary judgment, Defendants argue that they cannot be held liable for actual or statutory damages or for attorney's fees under Sections 405(b) and 412(1). Because Defendants' second ground in support of summary judgment would not dispose of all relief requested by Plaintiffs, it is in the nature of a request for partial summary judgment. Because the Court has concluded that Defendants are entitled to summary judgment with respect to Plaintiffs' claims for conspiracy and infringement, the Court need not address at length Defendants' claims under Sections 405 and 412.

In their third ground in support of motion for summary judgment, the Ingram Square Group Defendants assert that the cause of action alleged in Count II of the

Second Amended Complaint for unfair competition has been preempted by the Copyright Act of 1976. Defendants alternatively assert that the cause of action is not directed at any conduct committed by the Ingram Square Group Defendants and that the conspiracy theory cannot be used to extend liability to the Ingram Square Group Defendants on the basis of conduct committed by other defendants.

Count II of Plaintiffs' Second Amended Complaint, entitled "Unfair Competition," charges that certain defendants conspired with and solicited from certain other defendants contracts for the creation, production, and distribution of architectural and engineering plans and specifications for the Ingram Square Solo Serve retail store. Plaintiffs further charge that "Defendants, through their agents or employees in the course of conspiracy with other Defendants, willfully and deceptively engaged in unfair competition practices in that the Defendants did not independently create, produce or distribute said architectural and engineering drawings and specifications, but sought to reap where they had not sown by deceptively and fraudulently utilizing the work product of Plaintiffs." (Second Amended Complaint, paragraph 26). Defendants argue that the cause of action set forth in Count II of Plaintiffs' Second Amended Complaint charges the common law action of "misappropriation," first recognized in federal common-law in *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). In *INS v. AP*, the Supreme Court found that a gatherer of news possessed a protectable property interest in fresh news items and could prevent a competitor from taking the gatherer's news items and redistributing them after rewriting. The Court found that although the copyright laws did not afford protection to the content of news items, the federal common-law did afford such protection for as long as the information remained newsworthy.[9]

Section 301 of the Copyright Act of 1976 provides that federal copyright law exclusively governs works of authorship that are within the subject matter of copyright and all legal or equitable rights that are equivalent to the exclusive rights within the scope of the federal copyright law. By the express terms of Section 301(a), the Copyright Act of 1976 preempts the common-law or statutes of any state.[10]

As one court has observed, the law of preemption prior to the enactment of the Copyright Act of 1976 "was in a state of disarray." *Orth-O-Vision, Inc. v. Home Box Office*, 474 F.Supp. 672, 683 n. 11 (S.D. N.Y.1979). The enactment of Section 301 has to a certain extent simplified the preemption analysis under copyright law. Section 301 establishes a two-pronged analysis for preemption under the 1976 Copyright Act: (1) whether the nature of the work at issue is within the subject matter of copyright as defined in Sections 102 and 103, and (2) whether the rights granted under state law are equivalent to any of the exclusive rights within the general scope of

---

**9.** *INS v. AP* was a creature of the federal common-law adopted prior to the ruling in *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). While the federal common-law no longer provides the source for the action of misappropriation, state law can provide the basis for such protection.

**10.** Section 301 of Title 17 of the United States Code provides in pertinent part:

(a) On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by Sections 102 and 103, whether created for or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common-law or statutes of any State with respect to—

(1) Subject matter that does not come within the subject matter of copyright as specified by Sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or . . .

(3) Activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106.

copyright as specified by Section 106. 17 U.S.C. § 301(b)(1) & (3). See *Harper & Row Publishers, Inc. v. Nation Enterprises*, 501 F.Supp. 848, 850 (S.D.N.Y.1980); *Mitchell v. Penton/Industrial Publishing Co., Inc.*, 486 F.Supp. 22 (N.D.Ohio 1979); *Orth-O-Vision, Inc. v. Home Box Office*, 474 F.Supp. 672, 682–84 (S.D.N.Y.1979). The legislative history of the Copyright Act of 1976, H.R. Rep. No. 94–1476, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin. News 5659, indicates an express Congressional intent to "preempt and abolish any rights under the common-law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law." However, consistent with the decisions in *Sears Roebuck and Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), "preemption does not extend to causes of action or subject matter outside the scope of the revised Copyright Statute." The Committee report further states that Section 301 is not intended to preempt all causes of action for "unfair competition," including the action for misappropriation. " 'Misappropriation' is not necessarily synonymous with copyright infringement, and thus a cause of action labeled as misappropriation is not preempted if it is [in] fact based neither on a right within the general scope of copyright as specified by Section 106 ... nor on a right equivalent thereto. For example, state law should have the flexibility to afford a remedy (under traditional principles of equity) against a consistent pattern of unauthorized appropriation by a competitor of the facts, (i.e., not the literary expression) constituting "hot" news, whether in the traditional mode of *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918) or in the newer form of data updates from scientific, business or financial data bases." [1976] U.S.Code Cong. & Admin. News at p. 5748.

■ The first prong of the analysis under Section 301, the subject matter of copyright, is clearly satisfied in this case. Section 102 extends copyright protection to "original works of authorship fixed in any tangible medium of expression," including literary works, and pictorial, graphic, and sculptural works. 17 U.S.C. § 102(a)(1) & (5). Architectural and engineering drawings fall within the subject matter of copyright. See *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir. 1972); *DeSilva Construction Corp. v. Herrald*, 213 F.Supp. 184 (M.D.Florida, 1962).

The second prong of the preemption analysis contained in Section 301 requires the Court to determine whether the rights sought to be enforced under state law are "equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106." 17 U.S.C. § 301(b)(3). Section 106 provides that an author has exclusive rights to do and to authorize (1) the reproduction of copyrighted work (to make copies), (2) the preparation of derivative works based on his copyrighted work, and (3) the distribution of copies of the copyrighted work to the public by sale or other transfer of ownership.

■ Under this prong, Section 301 requires preemption when state law rights are not "different in kind" from the rights protected under the Copyright Act.

In assessing whether a cause of action under state law is "equivalent" to a claim of copyright infringement, the Court must compare the rights sought to be protected under the federal and state laws. The fact that the state cause of action is composed of fewer elements of proof than a copyright infringement claim is not in itself dispositive. The state cause of action must protect rights under the facts of a particular case which are *qualitatively* different from the rights of reproduction, performance, distribution, or display.

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 501 F.Supp. 848, 852 (S.D.N.Y. 1980). Accord *Orth-O-Vision v. Home Box Office*, 474 F.Supp. 672, 682 (S.D.N.Y.1979).

■ The general elements of the unfair competition cause of action for misappropriation are: (1) the Plaintiff created his product through extensive time, labor, skill, or

money; (2) the Defendant used Plaintiff's product in competition with Plaintiff, gaining a special advantage (a free ride) because the Defendant bore little or no burden of the expense of development; and (3) that Defendant's use of Plaintiff's product caused commercial damage to Plaintiff. *Synercom Technology, Inc. v. University Computing Co.*, 474 F.Supp. 37, 29 (N.D. Tex.1979). See *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). The Texas Courts have not expressly embraced a cause of action for misappropriation, although at least one court has implicitly recognized an action for misappropriation.[11]

Assuming that the Texas courts recognize a cause of action for misappropriation, the issue before the Court is whether the rights Plaintiffs seek to protect under state law are equivalent to the rights enumerated in Section 106 of the Copyright Act. It appears to the Court from a reading of Count II of Plaintiffs' Second Amended Complaint and from the facts established on motion for summary judgment that Plaintiffs seek to enforce rights that are substantially equivalent to, if not identical to, the exclusive rights of copyright to reproduce and distribute their architectural and mechanical drawings and specifications. In order to establish copyright infringement, Plaintiffs must prove that Defendants copied Plaintiffs' work. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 113 (5th Cir.

1978). In order to establish their action for misappropriation, Plaintiffs must establish the same facts—that is, that Defendants copied Plaintiffs' work. That the cause of action for misappropriation also includes the elements of Defendants' use of Plaintiffs' product in competition with Plaintiffs to the commercial damage of Plaintiffs, does not render "different in kind" the rights under state and federal law. Indeed, Plaintiffs charge that "Defendants did not independently create, produce, or distribute said architectural and engineering drawings and specifications," which is the same conduct forming the basis of Plaintiffs' cause of action for copyright infringement.

▮▮▮▮ Comparing the essence of Plaintiffs' claims for copyright infringement and unfair competition, and comparing the elements of the two causes of action in the context of the specific facts in the case at bar, the Court concludes that Plaintiffs seek to enforce in their unfair competition claim rights that are substantially equivalent to the exclusive rights within the general scope of copyright. That an action for unfair competition might under different facts protect different rights,[12] does not answer the directive of Section 301. Accordingly, the Court finds that summary judgment in behalf of the Ingram Square Group Defendants is appropriate with respect to Plaintiffs' claim of unfair competition for the reason that said claim is preempted by

---

**11.** In *Wissman v. Boucher*, 150 Tex. 326, 240 S.W.2d 278 (1951), the Court assumed the existence of an action for misappropriation, but found that the evidence did not show unfair competition. However, in *Loeb v. Turner*, 257 S.W.2d 800 (Tex.Civ.App.—Dallas 1953, no writ history), the Court expressly denied a cause of action by an Arizona broadcaster to enjoin a Texas radio station from broadcasting accounts of automobile races held in Arizona. The Court rejected the proposition of *INS v. AP*, that a news-gathering agency held a quasi-property right in fresh news items. In at least one other case, *Furr's, Inc. v. United Specialty Advertising Co.*, 338 S.W.2d 762 (Tex.Civ.App. —El Paso 1960 writ ref'd n. r. e.), the Court suggested that the misappropriation must be of a trade secret or in violation of a confidence.

**12.** Plaintiffs suggest that unfair competition includes a cause of action similar to that provided by Section 43(a) of the Landam Trademark

Act, 15 U.S.C. § 1125(a). That action, in turn, is similar to the tort of unfair competition involving palming off. This type of unfair competition imposes liability upon the Defendant passing off his goods as the goods of Plaintiff, creating a likelihood of confusion on the part of consumers about the source or origin of the products. *Boston Professional Hockey Association v. Dallas Cap & Emblem Manufacturing Inc.*, 510 F.2d 1004 (5th Cir. 1975), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98; *Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474 (5th Cir. 1974). Although the law of unfair competition obviously extends beyond the action for misappropriation, Section 301 requires the Court to determine preemption on the basis of the state-created rights Plaintiffs seek to enforce in the case at bar, and not hypothetical rights that may truly differ from the exclusive rights of copyright.

the Copyright Act of 1976. Notwithstanding the conclusion of preemption, however, the Court further believes that Plaintiffs' claim of unfair competition raises no genuine issue of material fact with respect to the Ingram Square Group Defendants. As indicated above, Plaintiffs cannot use the general allegations of conspiracy to extend the liability of other Defendants to the Ingram Square Group Defendants. Additionally, there exists no genuine issue of fact concerning copying or "misappropriation" of Plaintiffs' drawings and specifications by the Ingram Square Group Defendants, requiring entry of summary judgment on behalf of the Ingram Square Group Defendants on Plaintiffs' claim of unfair competition.

As their final ground in support of entry of summary judgment, the Ingram Square Group Defendants assert that Plaintiffs' cause of action alleging unjust enrichment is preempted by the Copyright Act of 1976. Alternatively, Defendants argue that the action for unjust enrichment is directed against other Defendants.

The Court finds that Defendants' preemption argument with respect to the action for unjust enrichment is not well taken. Unlike Plaintiffs' action for misappropriation, the action for unjust enrichment, or quantum meruit, involves rights that do not fall within the scope of copyright. The Texas courts have recognized the right to recover on quantum meruit, basing recovery upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Davidson v. Clearman*, 391 S.W.2d 48, 50 (Tex.1965); *Black Lake Pipeline Co. v. Union Construction Co.*, 538 S.W.2d, 80, 86 (Tex.1976); *Patterson v. Hatfield-Holcomb, Inc.*, 582 S.W.2d 899, 901 (Tex.Civ.App.—Waco 1979, no writ). The cause of action for quantum meruit "is founded upon the principle that it is inequitable for one to refuse to pay for benefits received or work performed and accepted with his knowledge and consent by a person who should expect remuneration therefor

from him." *Simon v. L. D. Brinkman & Co.*, 449 S.W.2d 90, 92 (Tex.Civ.App.—Waco 1969), reversed on other grounds, 459 S.W.2d 190 (Tex.1970).

■ The essential elements for recovery under quantum meruit are: (1) valuable services were rendered or materials furnished, (2) to the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the Plaintiff, in performing such services was expecting to be paid by the person sought to be charged. *Montes v. Naismith and Trevino Construction Co.*, 459 S.W.2d 691, 694 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.).

■ The rights Plaintiffs seek to enforce in their action for quantum meruit are not equivalent to the exclusive rights of the Copyright Act. By their action for unjust enrichment, Plaintiffs seek to recover the value of the architectural and mechanical services rendered to Defendants by Defendants' acceptance and use of Plaintiffs' drawings and specifications. The rights Plaintiffs seek to enforce are fundamentally different in kind from the exclusive rights in copyrighted works to reproduce a copyrighted work, to prepare a derivative work or to distribute copies of copyrighted work. Plaintiffs seek not to enforce their rights to copy and distribute their plans and drawings. Nor do Plaintiffs seek to recover damages analogous to the actual damages provided by § 504(b).[13] Rather, Plaintiffs seek to recover under quantum meruit theory the value of the services rendered by Defendants' use of the plans and specifications prepared by Plaintiffs. Thus, both the rights Plaintiffs seek to enforce and the measure of damages under the unjust enrichment theory differ from those under copyright law. Section 301 has not preempted Plaintiffs' cause of action for unjust enrichment.

---

13. Section 504(b) provides in part:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

■ While Section 301 has partially simplified the preemption analysis under the copyright laws, the section has not entirely superseded the analysis of the prior case law. The preemption analysis established by Section 301 preempts state-created actions that enforce rights that are the equivalent of the exclusive rights of copyright contained in Section 106. The statute, therefore, expressly preempts those state-created actions that are redundant of copyright protections. In a line of cases beginning in 1964 involving patent and copyright statutes, the Supreme Court has recognized an independent basis for preemption, holding that state laws are preempted when their scheme of protection "clashes with the objectives of the federal patent [or copyright] laws." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 (1964).

In *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), the Court first considered the preemptive effect of the patent laws on state laws offering similar protections. Both *Sears* and *Compco* involved the copying of lighting fixtures for which design patents had been held invalid. In both cases, the lower courts had applied state laws of unfair competition to accord patent-like protection to articles that did not qualify for protection under the federal patent laws. The Court held in both cases that state law could not be used to extend patent protection where such protection would interfere with the system of laws passed by Congress to balance the promotion of invention and authorship while preserving free competition. The Court stated:

> Obviously a State could not, consistently with the Supremacy Clause of the Constitution, extend the life of a patent beyond its expiration date or give a patent on an article which lacked the level of invention required for federal patents. To do either would run counter to the policy of Congress of granting patents only to true inventions, and then for only a limited time. Just as a State cannot encroach upon the federal patent laws directly, it

cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws." *Sears*, 84 S.Ct. at 788–89. The Court concluded that because the lighting fixtures at issue were not entitled to patent protection, their design was in the public domain and could be used by anyone choosing to do so. " 'Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested.' " *Sears*, 84 S.Ct. at 789 (quoting *Kellogg v. National Biscuit Co.*, 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73 (1938)).

Although the language in *Sears* and *Compco* was broad, the Court recognized in *Compco* that the patent and copyright laws did not prevent a state from imposing liability on persons seeking to wrongfully trade on the goodwill of the original manufacturer or producer. "A state of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceived the public by palming off their copies as the original." *Compco*, 84 S.Ct. at 782.

In *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973), the Court again considered preemption analysis, this time in the context of the copyright laws. At issue in *Goldstein* was the power of the state to make unlawful the piracy of musical recordings that were not the subject matter of copyright. The court in *Goldstein* restated the preemption question as follows: "Our primary function is to determine whether, under the circumstances of this particular case, [the State] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." 93 S.Ct. at 2312 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Declining to find preemption of the state law prohibiting the piracy of recordings, the Court reasoned in *Goldstein* that *Sears* and *Compco* did not apply. Unlike the law of

patent, in which Congress expressly determined which mechanical configurations it wished to protect and which it did not wish to protect, the Court could not conclude that Congress drew a similar balance with respect to all "writings." Because Congress drew no balance indicating that recordings were not entitled to protection, the states could offer protection to such "writings" without contradicting or obstructing the accomplishment and execution of the purposes and objectives of Congress.

The Court extended its preemption analysis in *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). The Court in *Kewanee* considered the preemptive effect of the patent laws on the law of the State of Ohio protecting trade secrets, and concluded that federal law did not preempt the state law. *Kewanee* involved an invention subject to the reach of patent, a seventeen inch crystal useful in the detection of ionizing radiation, but not sufficiently novel to enjoy patent protection. The Court determined that federal law did not preempt state law.

Reiterating the preemption analysis developed in *Sears, Compco,* and *Goldstein,* the Court stated, "The only limitation on the States is that in regulating the area of patents and copyright, they do not conflict with the operation of the laws in this area passed by Congress . . . ." 94 S.Ct. at 1885. To determine whether the scheme of protection developed by the state law of trade secrets "clashe[d] with the objectives of the federal patent laws," the Court examined the objectives of both the patent and trade secret laws to determine the effect of the enforcement of state law on the twin purposes of patent law.[14] The Court examined three categories of trade secrets, distinguished by differing degrees of certainty about their patentability,[15] to determine

whether trade secret protection was inconsistent with the purposes of patent law. With respect to the first policy of patent, to encourage invention, the Court had little difficulty. "Certainly the patent policy of encouraging invention is not disturbed by the existence of another form of incentive to invention." 94 S.Ct. at 1887.

With the patent policy of encouraging full disclosure of inventive ideas the Court encountered some difficulty. However, the Court concluded that for all three categories of invention, non-patentable, doubtfully patentable, and clearly patentable, enforcement of state trade secret law would not clash with the purposes of patent law. For non-patentable and doubtfully patentable inventions, trade secret law would not inhibit full disclosure, since disclosure would not be required by the patent laws in any event. Moreover, the state had a legitimate interest in taking action to prevent industrial espionage. For clearly patentable inventions, the Court recognized that a potential existed for a conflict with state law, but concluded such conflict was made unlikely by the broader protection afforded by patent law. Additionally, adoption of a doctrine of partial preemption would create serious problems for state courts in the administration of trade secret law, which result was not justified by the minimal effect of the state law on patent law.

The purposes of copyright protection are not unlike the purposes of patent law. "The objective [of copyright law] is to promote the progress of science and the arts. . . . To accomplish [this] purpose, Congress may grant to authors the exclusive right to the fruits of their respective works. . . . In other words, to encourage people to devote themselves to intellectual and artistic creation, Congress may guaran-

14. The Court recognized two purposes underlying the patent laws: (1) to "promote the Progress of Science and useful Arts" by offering a limited period of exclusion as an incentive to inventors, and (2) to insure full and adequate disclosure of the invention so that following the 17 year period of patent protection, the knowledge of the invention enured to the benefit of the public generally. *Kewanee,* 94 S.Ct. at 1885–86.

15. The Court considered the following categories of trade secrets:
"'(1) the trade secret believed by its owner to constitute a validly patentable invention; (2) the trade secret known to its owner not to be so patentable; and (3) the trade secret whose valid patentability is considered dubious.'" 94 S.Ct. at 1887 (quoting *Painton & Co., v. Bourns, Inc.,* 442 F.2d 216, 224 (2d Cir. 1971)).

tee to authors and inventors a reward in the form of control over the sale or commercial use of copies of their works." *Goldstein v. California*, 412 U.S. 546, 555, 93 S.Ct. 2303, 2309, 37 L.Ed.2d 163 (1973). In effecting this purpose, federal copyright law protects an author's expression, but does not protect the ideas underlying that expression. *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. 99, 25 L.Ed. 841 (1879); *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir. 1972).

Plaintiffs' action for unjust enrichment in this case will not conflict unacceptably with federal copyright policy. Plaintiffs seek to recover from Defendants the value of the architectural and engineering services Plaintiffs rendered to Defendants by their use of Plaintiffs' plans in developing architectural and electrical/mechanical drawings for the Ingram Square Solo Serve store. To the extent that the state law of unjust enrichment protects and promotes intellectual endeavor, enforcement of the action does not conflict with the congressional purpose of encouraging intellectual and artistic creation. See *Kewanee Oil Co. v. Bicron Corp.*, 94 S.Ct. at 1887.

It could be argued that enforcement of Plaintiffs' action for quantum meruit conflicts with the policy of copyright law to protect only expression and not to protect ideas or concepts. The state may not restrain the use of an idea or concept. *Goldstein v. California*, 93 S.Ct. at 2317. Copyright protects an architect's drawings, but does not grant him the exclusive right to use the idea or concept contained in the drawings or represented by a structure when completed. *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir. 1972).

However, the Texas law of quantum meruit would not restrain Defendants from merely using an architectural idea or concept identical to the idea contained in Plaintiffs' drawings. Similarly, in *Kewanee* the trade secrets law of Ohio would not prevent others from growing a crystal using the Plaintiffs' method, where the others had developed the method independently or had worked backward from the Plaintiffs'

crystal to "discover" the method. Rather, Texas law will protect Schuchart & Associates and Middleman & Associates only to the extent that they can establish that the law should imply from the facts developed at trial a promise by Defendants to pay for beneficial services rendered and knowingly accepted as such. *Davidson v. Clearman*, 391 S.W.2d 48, 50 (Tex.1965). The Texas law of quantum meruit affords Plaintiffs no protection simply because Defendants used Plaintiffs' ideas. Because Plaintiffs may recover under quantum meruit theory only if Defendants used Plaintiffs' plans under such circumstances that the Court may find that Defendants "accepted" the plans and were placed on reasonable notice that Plaintiffs expected payment therefor, Plaintiffs' action does not seek to improperly protect the use of an idea or concept. See *Werlin v. Reader's Digest Ass'n, Inc.*, 528 F.Supp. 451 (S.D.N.Y., 1981). Accordingly, Plaintiffs' action does not unreasonably interfere or conflict with federal copyright policy. Plaintiffs' action for unjust enrichment is not preempted by the Copyright Act of 1976.

Although the Ingram Square Group Defendants are not entitled to summary judgment on Plaintiffs' cause of action for unjust enrichment on the basis of preemption, it appears to the Court that Plaintiffs' third count raises no genuine issue of material fact with respect to these Defendants. In order to establish a right to recover on quantum meruit, Plaintiffs must establish that the Ingram Square Group Defendants received valuable services under such circumstances as would reasonably notify Defendants that Plaintiffs were expecting to be paid. The depositions, answers to interrogatories, and affidavits on file in this cause establish that Plaintiffs' architectural and engineering plans and specifications were never delivered to the Ingram Square Group Defendants. (See pages 934–935, *supra*). Indeed, the Court has found that there does not even exist a genuine issue of fact as to the Ingram Square Group Defendants' knowledge that architect Lance or engineer Travis were making use of Plaintiffs' drawings and specifica-

tions. (See pages 939–940, *supra*). Even if the Ingram Square Group Defendants indirectly benefitted from the use by other Defendants of Plaintiffs' drawings and specifications, there exists no factual issue concerning the conduct of the Ingram Square Group Defendants that is material to Plaintiffs' action for unjust enrichment. Accordingly, the Court concludes that entry of summary judgment in favor of the Ingram Square Group Defendants on Plaintiffs' action for unjust enrichment is appropriate.[16]

In conclusion, the Court finds that Defendants Ingram Square Limited, Bernard Lifschutz and Ted McWilliams, individually, and d/b/a Texas Southwest Developers No. 1 are entitled as a matter of law to entry of summary judgment against Plaintiffs Schuchart & Associates, Professional Engineers, Inc., and Barry P. Middleman & Associates, Inc. Judgment shall be entered for Defendants accordingly.

MOTION OF DEFENDANTS, INGRAM SQUARE LTD., BERNARD LIFSHUTZ AND TED McWILLIAMS, INDIVIDUALLY AND D/B/A TEXAS SOUTHWEST DEVELOPERS NO. 1, FOR JUDGMENT ON THE PLEADINGS, OR TO DISMISS, OR FOR SUMMARY JUDGMENT UNDER RULES 12 AND 56, FEDERAL RULES OF CIVIL PROCEDURE AGAINST CROSS–CLAIMANTS TRAVIS–BRAUN & ASSOCIATES, INC.

On January 7, 1982, Defendant Travis-Braun & Associates, Inc., the engineering firm hired by Lance, Larcade & Bechtol for the Ingram Square Project, filed a cross-claim against Defendants Solo Serve Corporation, Lance, Larcade & Bechtol, Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, individually and d/b/a Texas Southwest Developers No. 1. Travis-Braun alleges that it was employed by Lance, Lar-cade & Bechtol, acting individually and as agent for the owner, Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, individually and d/b/a Texas Southwest Developers No. 1, to adapt a set of lessee engineering plans and specifications on the Ingram Square Project. In the event Defendant Travis-Braun is held liable to Plaintiffs for copyright infringement, unfair competition, or unjust enrichment, Travis-Braun seeks contribution or indemnity for any liability to Plaintiffs, as well as reasonable and necessary costs and attorneys' fees.

The Ingram Square Group Defendants, Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, individually and d/b/a Texas Southwest Developers No. 1 move for judgment on the pleadings, or alternatively to dismiss or alternatively for summary judgment against cross-claimants Travis-Braun & Associates, Inc.[17] Because this Court has favorably ruled upon the Ingram Square Group Defendants' Motion for Summary Judgment against Plaintiffs Schuchart & Associates and Middleman & Associates, it appears that the Ingram Square Group Defendants are entitled to judgment as a matter of law on Travis-Braun & Associates' cross-claim for contribution and indemnity.

It is well established by the courts of the State of Texas that neither contribution nor indemnity can be recovered from a party against whom the injured party has no cause of action. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552–53 (Tex.1981); *Safway Scaffold Co. v. Safway Steel Products, Inc.*, 570 S.W.2d 225, 228–29 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n. r. e.); *Grove Manufacturing Co. v. Cardinal Construction Co.*, 534 S.W.2d 153, 154 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.), *City of Houston v. Watson*, 376 S.W.2d 23, 33

**16.** Again, Plaintiffs' invocation of conspiracy theory does not create a genuine factual issue with respect to the Ingram Square Group Defendants. (See pages 937–938, *supra*).

**17.** The Motion of the Ingram Square Group Defendants for judgment against Travis-Braun

& Associates and the Motion of Lance, Larcade & Bechtol for Partial Summary Judgment (discussed at pp. 950–951, *infra*) are before the Court following denial by the Magistrate. The Court has made a de novo review of Defendants' motions. See pages 935–936, *supra*.

(Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.). Moreover, this rule applies to cases in which the injured party's cause of action is extinguished by an adverse judgment to the injured party. *American Medicorp Inc. v. Lord,* 578 S.W.2d 837, 839–40 (Tex.Civ. App.—Beaumont 1979, no writ). See *Safway Scaffold Co. v. Safway Steel Products, Inc.,* 570 S.W.2d 225 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n. r. e.). Because Plaintiffs Schuchart & Associates and Middleman & Associates have no cause of action against the Ingram Square Group Defendants by virtue of the Court's entry of summary judgment on behalf of Defendants, it follows as a matter of law that Travis-Braun & Associates cannot recover either contribution or indemnity from the Ingram Square Group Defendants. Accordingly, the motion of Defendants Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, individually and d/b/a Texas Southwest Developers No. 1 for summary judgment against cross-claimant Travis-Braun & Associates, Inc., shall be granted and judgment shall be entered accordingly.

## MOTION OF DEFENDANT LANCE, LARCADE & BECHTOL FOR PARTIAL SUMMARY JUDGMENT

The final motion pending for consideration is the motion of Defendant Lance, Larcade & Bechtol for Partial Summary Judgment against Plaintiffs, Schuchart & Associates and Middleman & Associates. Defendant Lance, Larcade & Bechtol moves for partial summary judgment with respect to the causes of action for unfair competition and for unjust enrichment on the ground that said causes of action are preempted by Section 301 of the Copyright Act of 1976. The Court has considered at length the issues raised by the motion for partial summary judgment by Lance, Larcade & Bechtol in connection with the motion of the Ingram Square Group Defendants' Motion for Summary Judgment. For the reasons set forth at pages 941–945 of this memorandum opinion and order, the Court finds that the motion of Defendant Lance, Larcade & Bechtol for Partial Summary Judgment is well taken with respect to Plaintiffs' claim of unfair competition.

A state-created cause of action for unfair competition under the facts of this case is preempted by Section 301 of the Copyright Act of 1976. However, for the reasons set forth at pages 944–949 of this opinion, the Court believes that the rights protected by a state-created action for unjust enrichment are not the equivalent of the exclusive rights within the scope of protections set forth in the Copyright Act, 17 U.S.C. § 106. Plaintiffs' cause of action for unjust enrichment is not preempted by Section 301 and Defendant Lance, Larcade & Bechtol is not entitled to summary judgment on Count III of Plaintiffs' Second Amended Complaint. Accordingly, the Court shall grant Defendants' Motion for Partial Summary Judgment with respect to the complaint of unfair competition contained in Count II, and shall deny partial summary judgment with respect to the complaint for unjust enrichment contained in Count III of Plaintiffs' Second Amended Complaint. Therefore,

IT IS HEREBY ORDERED that the Motion of Ingram Square Ltd., Bernard Lifschutz and Ted McWilliams, individually and d/b/a Texas Southwest Developers No. 1 for summary judgment against Schuchart & Associates, Professional Engineers, Inc. and Barry P. Middleman & Associates, Inc., is granted in its entirety. Judgment shall be entered in favor of Defendants accordingly.

IT IS FURTHER ORDERED that the Motion of Ingram Square Limited, Bernard Lifschutz and Ted McWilliams, individually and d/b/a Texas Southwest Developers No. 1 for summary judgment against cross-claimant Travis-Braun & Associates, Inc., is granted in its entirety. Judgment in favor of Defendants against cross-claimant shall be entered accordingly.

IT IS FURTHER ORDERED that the Motion of Lance, Larcade & Bechtol for Partial Summary Judgment against Plaintiffs Schuchart & Associates, Professional Engineers, Inc., and Barry P. Middleman & Associates, Inc., is granted in part and denied in part. Summary Judgment shall be entered in favor of Defendant of Lance, Larcade & Bechtol with respect to Plain-

tiffs' cause of action for unfair competition, contained in Count II of Plaintiffs' Second Amended Complaint. Summary Judgment in behalf of Defendant shall be denied with respect to Plaintiffs' cause of action for unjust enrichment, contained in Count III of Plaintiffs' Second Amended Complaint.