ACORN STRUCTURES, INC., Plaintiff,

v.

Robert F. SWANTZ, Defendant.

Civ. A. No. 86–0015–C.

U.S. District Court,
W.D. Virginia,
Charlottesville Division.

Jan. 16, 1987.

** This suggestion is, of course, not meant to demean the current appraisals in any way.

Edward B. Lowry, Kevin W. Ryan, Charlottesville, Va., for plaintiff.

Robert H. Blodinger, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This is a diversity suit, with jurisdiction based on 28 U.S.C. § 1332 (1982), the plaintiff, Acorn Structures, Inc. ["Acorn"], being a Massachusetts corporation and the defendant, Robert F. Swantz, being a citizen of the Commonwealth of Virginia. Acorn is engaged in the business of selling "House Packages" consisting of (1) architectural plans prepared and owned by Acorn, and (2) building materials for the construction of houses in accordance with the architectural plan. Acorn is suing on the common law actions of breach of contract, conversion, and unjust enrichment, for unauthorized use of its architectural plans, which had been sold subject to certain conditions to the defendant. Swantz argues that the conditions in the sale agreement which restrict his use of the plans are pre-empted by federal copyright law, specifically the Copyright Act of 1976, 17 U.S.C. § 301 (1982), and are therefore unenforceable under state law.

*Statement of Facts*

Acorn Structures, Inc., is in the business of selling building materials for homes which it designs. In connection with this, Acorn regularly modifies its home designs in accordance with the wishes of its prospective house package customers. On October 28, 1983, Mr. Swantz entered into a written contract, entitled "Design Agreement," with Acorn which provided for the performance of architectural services by Acorn in consideration of payment by Swantz. It is undisputed that while Swantz was not committed to purchase building materials from Acorn, the use of design agreements was a marketing strategy on Acorn's part to induce customers to purchase building materials from Acorn.

Under the Design Agreement, Acorn first prepared a set of design drawings for

Swantz, who suggested certain revisions. As provided in the Design Agreement, Swantz paid an initial fee of $750 and agreed to pay $30 per hour for the cost of significant design changes after completion of the initial set of plans. The Design Agreement also provided that if Swantz purchased an Acorn housing materials package, all design fees would be credited toward the purchase price of the materials package. On the other hand, if he were to choose not to purchase an Acorn housing materials package, the Design Agreement provided that he would receive a $100 refund upon his return of all design drawings to Acorn. The court notes that Swantz was not obligated to return the drawings and obtain this refund. The contract explained that Acorn supplied materials with a two-year limited warranty, and would not engage in construction of the building. A purchaser could also choose his own builder, although Acorn asserted its readiness to suggest a local builder. A further provision of the Design Agreement, and that which is the central issue of the instant case, provides that:

> All Acorn drawings are copyrighted and are its property, and may not be used or copied in any way, in whole or in part, without the written consent of Acorn. The design fee is not a license fee and does not authorize you to use or copy any drawings provided by Acorn.

Each page of the plans, both originally and as revised, bore a statement which read: "A copyright is claimed on these drawings and no use may be made of them without prior written permission of Acorn Structures, Inc."

Swantz notified Acorn that there would be a delay in his purchase of the Acorn building materials house package because of financial considerations. Swantz then apparently delivered the plans to Richard J. Fox, an architect, who allegedly modified the plans and filed them under his own seal with the Building Permits and Inspections Office for Albemarle County, Virginia, which issued a building permit for the construction of a house and garage. The construction of the house and garage is complete. At no time did Acorn consent to Swantz' use of the plans.

These then are the facts as alleged in the complaint. In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this court will follow the well established rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addition, the complaint will be construed in the light most favorable to plaintiff and its allegations will be taken as true. 5 C. Wright & Miller, *Federal Practice and Procedure, Civil* § 1357 (1969 & Supp. 1985). However, it is also clear that state claims should be dismissed when the Supremacy Clause of the Constitution of the United States, art. VI, clause 2, requires pre-emption of such claims. In the context of copyright laws, courts have properly dismissed state law claims found to be preempted by federal statute. *See, Harper & Row Publishers, Inc. v. Nation Enterprises,* 501 F.Supp. 848 (S.D.N.Y.1980), *aff'd in relevant part,* 723 F.2d 195 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1985).

*Federal Pre-emption*

Under the Supremacy Clause of the Constitution of the United States, art. VI, clause 2, state laws may be superseded by federal law in one of several ways: (1) acting within its constitutional power, Congress may pre-empt state law in express terms; (2) Congress may adopt a scheme of federal regulation sufficiently comprehensive to raise the inference that it intended to pre-empt state law in a given area; (3) the courts may find the federal interest in a particular field so dominant that state laws involving the field are assumed to be precluded; or (4) the courts may strike a state law in actual conflict with federal law if compliance with both is an impossibility. *See, Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985).

The Copyright Act of 1976, 17 U.S.C. § 101–810 (1982) [the "Act"], contains an express statement by Congress that the right to control reproduction of certain material is the exclusive province of federal law. In relevant part, the Act states:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under common law or statutes of any state with respect to—

.        .        .        .        .

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301.

Section 301 refers to both the "general scope" and the "subject matter" of copyright. The exclusive rights within the general scope of copyright as specified by section 106 include the rights "to reproduce the copyrighted work in copies or phonorecords," 17 U.S.C. § 106(1), and "to prepare derivative works based upon the copyrighted work," 17 U.S.C. § 106(2). The subject matter of copyright includes, among other things, "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). Such works clearly include architectural plans. *Schuchart & Associates, etc. v. Solo Serve Corp.*, 540 F.Supp. 928, 943 (W.D.Tex. 1982); *see generally*, 1 M. Nimmer, *Nimmer on Copyright*, § 2.08[d][2]; *see also* Annot., 3 A.L.R.Fed. 793 (1970).

In determining whether the state law claims asserted in this case are pre-empted by federal copyright law, this court must determine whether the right on which these claims are based is "equivalent to copyright." Legislative history of the Act is somewhat helpful in determining a proper test for when pre-emption should apply. "[T]he preemption of rights under state law is complete with respect to any work coming within the scope of the [Act]s, even though the scope of exclusive rights given the work under the [A]ct is narrower than the scope of common law rights in the work might have been." H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 131, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5747. A perhaps clearer statement of the test for pre-emption has been stated in the leading copyright treatise as follows:

[I]n essence a right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display.

.        .        .        .

If under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will *in itself* infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is not preemption.

1–11 to 1–12 (1978) (emphasis in original).

The "subject matter of copyright" test is clearly satisfied in this case. The second prong of the pre-emption analysis contained in section 301 requires the court to determine whether the rights sought to be enforced under state law are "equivalent to" any of the exclusive rights within the general scope of copyright as specified by section 106. 17 U.S.C. § 301(b)(3). Plaintiff argues that each of its common law claims is based upon Mr. Swantz' unauthorized use of the plan as a guide to the construction of the house. For purposes of this suit, plaintiff claims that Swantz' copying of the plan and preparation of a deriva-

tive work, namely, the plan filed with the Buildings Permits and Inspections Office, are not elements of Acorn's claim. In plaintiff's Response to Motion to Dismiss, at p. 9, filed June 23, 1986, Acorn argues that defendant Swantz converted the value of Acorn's architectural design services by using the plan. Acorn contends that Swantz unlawfully and wrongfully violated plaintiff's ownership rights in the plans by using them without Acorn's consent, without purchasing them from Acorn, and without purchasing from Acorn the building materials for the construction of the house and garage according to said plans. Complaint, p. 5, filed April 2, 1986.

■ The tort of conversion consists of "any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." *Universal C.I.T. Credit Corp. v. Kaplan,* 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956). In an action for conversion, plaintiff must show a property right in a converted item and entitlement to immediate possession thereof, along with the defendant's wrongful exercise of authority over the property. *See,* 18 Am.Jur.2d, *Conversion* § 2 (1985). It is the opinion of this court that, absent a claim for copyright infringement, a cause of action does not lie for the tort of conversion under the facts of this case. Swantz had an absolute right to possession of the plans, and the only damages which may have flowed from his alleged unauthorized use are the result of his alleged copying of the plan. Therefore, plaintiff's cause of action for conversion must be dismissed.

■ Likewise, plaintiff's cause of action for unjust enrichment fails on its own merits. The parties herein entered into an express agreement, and where an express contract exists, an action for unjust enrichment is improper. *In re Virginia Block Co.,* 16 B.R. 771, 774 (Bankr.W.D.Va.1982). An unjust enrichment claim must establish the value of work performed, the defendant's acceptance of value with the understanding that he is obligated to pay, and the failure of the defendant to pay. *See, e.g., Schuchart & Assoc., etc. v. Solo Serve*

*Corp.,* 540 F.Supp. 928 (W.D.Tex.1982). None of the above elements is present in the case at bar. If defendant has been unjustly enriched, it is only through the unauthorized copying of the plans and preparation of a derivative work, areas of state law clearly pre-empted by the Copyright Act.

■ It is the plaintiff's claim for damages for breach of contract that requires careful analysis. Under the express terms of the contract, defendant Swantz agreed not to use the plans designed for him by Acorn, absent compliance with other terms of the contract. Under plaintiff's reasoning, Swantz agreed not to use the plans, he used the plans, therefore he is in breach of contract. This court agrees that, absent the federal copyright laws, Acorn would have stated a proper cause of action for breach. However, the copying of architectural drawings by building the structure depicted therein has been the subject of much litigation under the copyright laws. In a line of cases beginning in 1964 involving patent and copyright statutes, the Supreme Court has recognized an independent basis for pre-emption, holding that state laws are pre-empted when their scheme of protection "clashes with the objectives of the federal patent [or copyright] laws." *Sears Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 (1964). In a related case, *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), the Court held that state law could not be used to extend patent protection where such protection would interfere with the system of laws passed by Congress to balance the promotion of invention and authorship while preserving free competition. The primary function of pre-emption analysis is to determine whether under the circumstances of a particular case, the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Goldstein v. California,* 412 U.S. 546, 561, 93 S.Ct. 2303, 2312, 37 L.Ed.2d 163 (1972) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

In *Goldstein,* the Court reasoned that *Sears* and *Compco* did not apply, since Congress had left open the question of whether records, as renderings of original artistic performance, should be protected. Therefore states were free to act in the void. *Id.* at 570, 93 S.Ct. at 2316.

■ Since architectural works are clearly covered by the Copyright Act, as discussed *infra,* the language quoted above is applicable to the case at bar even though the outcome in *Goldstein* is distinguishable. It is well established that federal copyright law protects an author's expression, but does not protect the ideas underlying that expression. *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Baker v. Selden,* 101 U.S. 99 (1879); *Schuchart, supra,* at 948. Thus, it is for this court to decide whether a breach of contract action of this type conflicts with the intent of Congress to refuse to protect underlying ideas, or whether there is a void in which Congress left room for states to act.

Under copyright law, it has been recognized not to be an infringement to build or construct the object or structure depicted in a plan or drawing copyrighted as a technical or scientific work under 17 U.S.C. § 5(i). For example, in *De Silva Construction Corp. v. Herrald,* 213 F.Supp. 184 (M.D.Fla.1962), it was held that the protection of a copyright in architectural plans is limited to the plans themselves and (with the possible exception of a structure which would qualify as a work of art) does not give the architect the exclusive right to build the buildings or structures embodied in the plans. Likewise, in *Muller v. Triborough Bridge Authority,* 43 F.Supp. 298 (S.D.N.Y.1942), a copyright in a drawing or picture of a nonartistic object was held not to preclude others from making the three dimensional object portrayed therein. Of course, this court recognizes that a cause of action under the copyright laws may have been stated if Swantz had marketed the house plan and distributed copies of it to others. *See, e.g., Scholz Homes Inc. v. Maddox,* 379 F.2d 84 (6th Cir.1967). However, that is not the case here.

In fact, Swantz' action would appear to fall directly under the rule judicially created in the landmark case of *Baker v. Selden,* 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1880), which held that where the art which a copyrighted work teaches cannot be used without employing the methods and diagrams printed therein, copying for such practical application does not violate the copyright laws. In *Baker,* the copyrighted work described a bookkeeping system using certain formats. The Court held these pages to be necessary incidents of the art of bookkeeping, and that copying of these pages so as to employ the ideas found in the work was not a violation of the copyright.

Since the activity complained of by Acorn is similar to activity that has been the repeated subject of copyright litigation, and since it has been the determination of courts that Congress did not intend to extend protection to the use of ideas found in copyrighted works, but does extend protection to the reproduction of the depictions in which such ideas are shown, it is the opinion of this court that such activity falls squarely within the scope of federal copyright law. It can only be presumed that when Congress created copyright protection it did not intend to prohibit the free flow of ideas, but merely to protect the depiction of such ideas. On this analysis, a state law claim which would enforce a breach of contract action for the use of an idea would conflict with the implicit goals of the Copyright Act.

■ It is further the opinion of this court that Acorn's artful pleading is an attempt to circumvent the limitations on the protection provided by federal copyright. Under the analysis of the *Baker* case, preparing a derivative work and filing such plans with the Building and Permits Office is simply a necessary incident to building the structure depicted in the plans, and does not constitute a copyright infringement. Therefore, even if Acorn had properly brought this action as a copyright claim, it would be barred from recovery. Of course, this court's conclusion also pre-

cludes Acorn from recovering any punitive damages as requested in the complaint.

*Conclusion*

For the above stated reasons, it is the decision of this court that the motion to dismiss filed by defendant Swantz should be granted. The complaint states no basis for recovery as a matter of law, either due to the pre-emption of state common law causes of action by federal copyright law or because said causes of action fail on their own merits. Nor would federal copyright law itself provide an avenue for relief. An appropriate Order shall this day issue.