846 F.2d 923
 1988 Copr.L.Dec. P 26,251, 6 U.S.P.Q.2d 1810
 ACORN STRUCTURES, INC., Plaintiff-Appellant,
v.
Robert F. SWANTZ, Defendant-Appellee,
v.
AMERICAN INSTITUTE OF ARCHITECTS; National Society of
Professional Engineers; Virginia Society of the
AIA, Amici Curiae.
 No. 87-1039.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 4, 1987.
Decided March 11, 1988.
 
 John A.D. Gilmore (Nilda M. Navarro, Hill & Barlow, Boston, Mass., on brief), for plaintiff-appellant.
 Craig Thomas Merritt (Robert Alfred Gouldin, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., on brief), for defendant-appellee.
 Before RUSSELL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This action is brought by Acorn Structures, Inc., plaintiff/appellant, alleging breach of contract, conversion, and unjust enrichment for the unauthorized use of its architectural plans which had been sold, subject to certain conditions, to the defendant/appellee, Robert F. Swantz. Subject matter jurisdiction rests on diversity of citizenship, 28 U.S.C. Sec. 1332, plaintiff Acorn being a Massachusetts corporation, while defendant Swantz is a resident of Virginia. Defendant's motion to dismiss was granted by the district court on each of plaintiff's three causes of action. The court found that the claims for conversion and unjust enrichment failed to state a claim on which relief could be based. We agree. However, the court dismissed the breach of contract claim finding that it had been preempted by federal law, specifically, the Copyright Act of 1976, 17 U.S.C. Sec. 301. The principal issue before us is whether the district court erred in its judgment that plaintiff's claim for breach of contract is preempted by federal copyright law. We reverse the judgment of the district court on this issue.
 
 I.
 
 2
 The pertinent facts are not subject to dispute. Acorn Structures, Inc. (Acorn), designs homes and sells the building materials for those homes. On October 28, 1983, Swantz entered into a "design agreement" with Acorn which provided for the performance of architectural services by Acorn in consideration of $750.00 paid by Swantz. The design agreement did not commit Swantz to purchase building materials from Acorn but it did provide an incentive to do so by offering to credit the $750.00 paid for the architectural services toward the purchase of the building materials. If Swantz were to choose not to purchase the materials from Acorn, the agreement provided that he would be entitled to a $100.00 refund for returning the drawings to Acorn. The design agreement provides in relevant part:
 
 
 3
 Signing this agreement does not commit you to purchase an Acorn house package, but does authorize Acorn to prepare for you at the costs indicated below ... [design drawings, etc.]
 
 
 4
 ... Acorn will prepare these design drawings for you as a prospective customer of an Acorn house package. All Acorn drawings are copyrighted and are its property, and may not be used or copied in any way, in whole or in part, without the written consent of Acorn. The design fee is not a license fee and does not authorize you to use or copy any drawings provided by Acorn.
 
 
 5
 All design fees may be applied to the price of an Acorn house package. If you do not purchase the house package, a refund of $100 of the design fee will be made upon return of all drawings to Acorn.
 
 
 6
 Swantz neither purchased building materials from Acorn nor did he return the drawings. Rather, Swantz notified Acorn that there would be a delay in his purchase of building materials because of financial difficulties but then delivered the drawings to another architect who filed a copy of the drawings under his own seal with the Building Permits and Inspections Office which issued a building permit for the house and adjacent garage. The construction of the house and garage has now been completed.
 
 II.
 
 7
 Acorn contends that Swantz breached the contractual provisions of the design agreement by using Acorn's plans without the consent of Acorn and without buying from Acorn any building materials for use in constructing the house and garage.
 
 
 8
 Swantz responds by arguing that this breach of contract claim has been preempted by federal law. Specifically, Swantz asserts that Section 301 of The Copyright Act of 1976 preempts Acorn's claim. 17 U.S.C. Sec. 301 provides in relevant part:
 
 
 9
 (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
 
 
 10
 (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to--
 
 
 11
 (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or
 
 
 12
 (2) any cause of action arising from undertakings commenced before January 1, 1978; or
 
 
 13
 (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.
 
 
 14
 The district court found that Acorn's claim for breach of contract was within the subject matter of copyright and therefore was preempted by Section 301. The district court properly noted that "federal copyright law protects an author's expression, but does not protect the ideas underlying that expression." Acorn Structures, Inc. v. Swantz, 657 F.Supp. 70, 75 (W.D.Va.1987) (citing Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); Baker v. Selden, 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879). Thus, in the judgment of the district court, while Acorn's design agreement itself would be protected by copyright law, the ideas underlying that agreement would not be protected. The district court found on this basis that "a state law claim which would enforce a breach of contract action for the use of an idea would conflict with the implicit goals of the Copyright Act." Acorn, supra, at 75. We find that the district court erred in its analysis of plaintiff's complaint.
 
 III.
 
 15
 Plaintiff's claim for breach of contract entails a distinct cause of action which is clearly not within the subject matter of copyright but arises out of the implicit contractual provisions of the design agreement. Swantz was not committed to purchase a house package from Acorn. However, Acorn prepared the plans for Swantz, only "as a prospective customer of an Acorn house package." Implicit in the contract between Acorn and Swantz was an agreement that while Swantz did not have to use Acorn's plans, if he did use Acorn's plans then he was obligated either to purchase the plans from Acorn or to purchase his building materials from Acorn. This agreement is clearly implied by the contract. Acorn's cause of action is based upon this implicit provision of the contract which does not arise out of the subject matter of copyright and is therefore a separate and distinct cause of action.
 
 
 16
 Accordingly, we hold that the district court erred in its judgment that plaintiff's claim for breach of contract is preempted by federal copyright law.
 
 IV.
 
 17
 Acorn further argues that the district court erred in dismissing the claims for conversion and unjust enrichment.
 
 
 18
 In Virginia, the tort of conversion consists of "[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights or inconsistent therewith." Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956). As noted by the district court, "Swantz had an absolute right to possession of the plans." 657 F.Supp. at 74. Although Acorn offered an inducement of one hundred dollars if the plans were returned, Swantz was under no obligation to return them. But Swantz did use the plans in the construction of his home, which the contract prohibited. Despite this the district court found that Swantz did not wrongfully exercise dominion over the property and dismissed the claim for conversion on that ground. It could be said under Restatement of Torts, Second, Sec. 228 that such use, which was unauthorized under the contract, constituted an actionable conversion.[1] Whether this would be true under Virginia law is a matter not considered below. We, however, find no occasion to resolve this matter here because at best conversion is only an alternative ground of action to that of breach of contract which we have sustained. A judgment on that claim would be dispositive of the conversion claim. We, therefore, find no error in the district court's disposition of this claim for these reasons. We may add that there does not appear any facts for an award of punitive damages in the breach of contract action under Virginia law. Kamlar Corp. v. Haley, 224 Va. 699, 299 S.E.2d 514 (1983).
 
 
 19
 Likewise, the district court committed no error in dismissing Acorn's claim for unjust enrichment. An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract. In re Virginia Block Co., 16 B.R. 771, 774 (W.D.Va.1982). It is undisputed that here there is an express contract between Acorn and Swantz which has not been set aside by the courts. Because there is an express contract in this case, the district court acted properly in dismissing Acorn's claim for unjust enrichment.
 
 
 20
 Accordingly, we reverse the judgment of the district court on the ground that plaintiff's claim for breach of contract was preempted by federal law, and remand to the district court for disposition of plaintiff's breach of contract suit on its merits.
 
 
 21
 REVERSED and REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 The pertinent language of the section is:
 One who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby seriously violated.