Michael H. HOLLAND, et al., Plaintiffs,

v.

CLINE BROTHERS MINING CO., INC., et al., Defendants,

CLINE BROTHERS MINING CO., INC., Third–Party Plaintiff,

v.

UNITED MINE WORKERS OF AMERICA, AFL–CIO, Third–Party Defendant.

Civ. A. No. 3:93–1170.

United States District Court, S.D. West Virginia, Huntington Division.

Feb. 1, 1995.

Mary Jane Pickens, Shari L. Collias, Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, Howard D. Deiner, David W. Allen, Gen. Counsel, Kenneth M.

Johnson, Assoc. Gen. Counsel, U.M.W.A. Health & Retirement Funds, Office of the Gen. Counsel, Washington, DC, for Michael H. Holland, Marty D. Hudson, Elliot A. Segal, Paul R. Dean, United Mine Workers of America 1950 Pension Trust, United Mine Workers of America 1974 Pension Trust, Thomas O.S. Rand, William P. Hobgood, Carlton R. Sickles, Gail R. Wilensky, United Mine Workers of America Combined Benefit Fund.

David W. Allen, U.M.W.A. Health & Retirement Funds, Washington, DC, Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, Kenneth Johnson, Howard D. Deiner, U.M.W.A. Health & Retirement Funds, Office of the Gen. Counsel, Washington, DC, for Joseph J. Stahl, II.

Erwin L. Conrad, Conrad & Clay, Fayetteville, WV, Dannie B. Fogleman, Coleman, Coxson, Penello, Fogleman & Cowen, P.C., Washington, DC, for Cline Bros. Min. Co., Inc., Lake Energy, Inc.

The Matewan Nat. Bank, pro se.

Thomas K. Fast, Conrad & Clay, Fayetteville, WV, for Kara Coal Co., interested party Lake Energy, Inc., Little Hope Min., Inc.

Leah Q. Griffin, Office of the Atty. Gen. of West Virginia, Workers' Compensation Litigation Unit, Charleston, WV, for State of W.V., Dept. of Commerce, Labor and Environmental Resources, Bureau of Employment Programs, Div. of Workers' Compensation, Coal Workers' Pneumoconiosis Fund.

Joseph A. Lazell, Office of the Atty. Gen., Nitro, WV, for Div. of Environmental Protection of the W.V. Dept. of Commerce, Labor and Environmental Resources.

Daynus Jividen, Office of Atty. Gen., Charleston, WV, for W.V. Div. of Labor.

C. Terry Owen, Deputy Atty. Gen., Workers' Compensation Litigation Unit, Charleston, WV, for State of W.V., Bureau of Employment Programs, Div. of Workers' Compensation, Office of Employer Accounts.

John R. Mooney, Marilyn L. Baker, Elizabeth A. Saindon, Beins, Axelrod, Osborne, Mooney & Green, Washington, DC, Charles F. Donnelly, Hostler Law Office, Charleston, WV, Robert H. Stropp, Jr., Gen. Counsel,

Intern. Union, U.M.W.A., Washington, DC, for United Mine Workers of America, AFL–CIO.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Third–Party Defendant United Mine Workers of America, AFL–CIO's ("UMWA") motions to dismiss the third-party complaints. Third-party Plaintiffs Lake Energy, Inc. ("Lake Energy") and Cline Brothers Mining Co., Inc. ("Cline Brothers") have responded, and the UMWA has replied.[1] The motion is ripe for adjudication.

### I.

The plaintiffs are certain Trust Funds and their representatives ("Funds") established by the UMWA. They have sued both Lake Energy and Cline Brothers ("the Companies") for contributions the Companies were obligated to make pursuant to the 1984 National Bituminous Coal Wage Agreement ("1984 NBCWA").[2] Under the 1984 NBCWA the Companies were obligated to pay the Funds $1.11 for every ton of coal they mined. In 1987 the Companies entered into second collective bargaining agreements with the UMWA whereby they became obligated to pay to the Funds only $0.25 per ton of coal mined. The Funds contend the 1987 agreements could not lower the Companies'

payments because any lowering would constitute a breach of the 1984 NBCWA.

After the Funds initiated this litigation, the Companies impleaded the UMWA, asserting the following claims: 1) If the Companies are liable to the Funds, the UMWA breached the 1987 agreements by failing to secure reduced contributions; 2) If the reductions in contributions are deemed ineffective, then the 1987 agreement is void for mistake or impossibility; and 3) If the contribution reductions are ineffective, the UMWA procured the 1987 agreement through fraud or misrepresentation.

### II.

### A.

The UMWA contends the Companies' claims of fraud and misrepresentation are preempted by the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* The UMWA argues any claim it committed fraud or misrepresented its position to induce the Companies to enter into contracts to reduce contributions to the Funds amounts to an allegation of a violation of 29 U.S.C. § 158(b)(3), which states: "It shall be an unfair labor practice for a labor organization or its agents ... to refuse to bargain collectively with an employer[.]" "Collective bargaining" includes negotiating an agreement in "good faith," 29 U.S.C. § 158(d).[3] The UMWA suggests any claim of fraudulent inducement or

---

1. The UMWA has filed a response only to Lake Energy's response; the time period to respond to Cline Brothers response has lapsed. *See Local Rule of Civil Procedure* 4.01(c).

2. Lake Energy merged with Thunder Mountain Energy, Inc. in 1991. All of the rights and obligations relevant herein were accrued by Thunder Mountain prior to its merger with Lake Energy. Thus, all references to Lake Energy's actions prior to 1991 refer to the conduct of Thunder Mountain.

 Cline Brothers merged with Brandy Mining, Inc. in 1991. Both Cline Brothers and Brandy Mining were signatories of the 1984 and 1987 agreements.

3. Negotiating an agreement in good faith has been described by the Supreme Court as follows:

 "It is apparent from the legislative history of the whole [NLRA] that the policy of Congress

is to impose a mutual duty upon the parties to confer in good faith with a desire to reach agreement, in the belief that such an approach from both sides of table promotes the over-all design of achieving industrial peace. Discussion conducted under that standard may narrow the issues, making the real demands of the parties clearer to each other, and perhaps to themselves, and may encourage an attitude of settlement through give and take. The mainstream of cases before the Board and in the courts reviewing its orders, under the provisions fixing the duty to bargain collectively, is concerned with insuring that the parties approach the table with this attitude. But apart from this standard of conduct, Congress intended that the parties should have wide latitude in their negotiations, unrestricted by any governmental power to regulate the substantive solution of their differences." (citations omitted). *N.L.R.B. v. Insurance Agents' Intern. Union, AFL–CIO,* 361 U.S. 477, 488, 80 S.Ct. 419, 426, 4 L.Ed.2d 454 (1960).

misrepresentation in the formation of the 1987 agreements is actually a claim it failed to bargain collectively in good faith, and thereby falls within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). On the other hand, the Companies argue their claims of fraud and/or misrepresentation are not preempted by the NLRA but rather fall within an exception to the NLRB's exclusive jurisdiction found within Section 301 of the Labor Management Relations Act ("LMRA"), Title 29 U.S.C. § 185.[4]

█ Generally, where conduct is either arguably protected or prohibited by the NLRA, the NLRA preempts state causes of action (such as fraud or misrepresentation). In *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982) the Supreme Court stated, "The [National Labor Relations] Board is vested with primary jurisdiction to determine what is or is not an unfair labor practice." In *Local 926, Intern. Union of Operating Engineers, AFL–CIO v. Jones*, 460 U.S. 669, 676, 103 S.Ct. 1453, 1458–59, 75 L.Ed.2d 368 (1983) the Supreme Court discussed the circumstances when NLRA preemption occurs:

"Our approach to the preemption issue has thus been stated[:] First we determine whether the conduct that the State seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the NLRA. Although the '[San Diego Building Trades Council v.] Garmon, [359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)] guidelines [are not to be applied] in a literal mechanical fashion,' Sears, [Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 188, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978)], if the conduct at issue is arguably prohibited or protected otherwise applicable state law and procedures are ordinarily pre-empted. Farmer [v. Carpenters, 430 U.S. 290, 296, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977)]. When, however,

the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act, we refuse to invalidate state regulation or sanction of the conduct. *Garmon, supra,* 359 U.S., at 243–44, 79 S.Ct., at 778."

In *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 197, 98 S.Ct. 1745, 1757, 56 L.Ed.2d 209 (1978) the Supreme Court explained:

"The critical inquiry [in the *Garmon* analysis] is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to … or different from … that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid."

█ However, when an activity can be defined as both an unfair labor practice under the NLRA and as a violation of a collective bargaining agreement pursuant to Section 301 of the LMRA, the jurisdiction of the NLRB is not exclusive, but concurrent with the courts:

"When an activity is either arguably protected by § 7 or arguably prohibited by § 8 of the NLRA, the preemption doctrine developed in [*Garmon*] and its progeny, teaches that ordinarily the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. When, however, the activity in ques-

4. Section 301 of the LMRA states, in pertinent part:
"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between

any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

tion also constitutes a breach of a collective bargaining agreement, the Board's authority is not exclusive and does not destroy the jurisdiction of the courts under § 301. * * * [This exception] was fashioned because the history of § 301 reveals that Congress deliberately chose to leave the enforcement of collective agreements to the usual processes of the law[.] Thus we have said that the *Garmon* doctrine is not relevant to actions within the purview of § 301, which may be brought in either state or federal courts[.]" (citations and internal quotation marks omitted). *William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville and Vicinity,* 417 U.S. 12, 15–16, 94 S.Ct. 2069, 2972, 40 L.Ed.2d 620 (1974).

*Accord Richardson v. Kruchko & Fries,* 966 F.2d 153, 156 n. 1 (4th Cir.1992) ("[Section] 301(a) of the [LMRA] gives both federal and state courts subject-matter jurisdiction over suits alleging a breach of the collective bargaining agreement between an employer and a labor organization. If conduct that constitutes an unfair labor practice also violates the collective bargaining agreement, then federal and state courts and the NLRB exercise concurrent jurisdiction.").

■ Moreover, there is a "strong policy" embodied in the LMRA favoring judicial enforcement of collective bargaining contracts over the exclusive jurisdiction of the NLRB in cases involving hybrid unfair labor practice/Section 301 violation claims; as stated by the Supreme Court in *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 561–562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976):

"Section 301 of the [LMRA] provides for suits in the district courts for violation of collective bargaining contracts between labor organizations and employers[.] This provision reflects the interest of Congress in promoting a higher degree of responsibility upon the parties to such agreements[.] *The strong policy favoring judicial enforcement of collective-bargaining contracts was sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board.* Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge." (emphasis added and citations omitted).

■ The UMWA contends the conduct alleged by the Companies—that the UMWA induced them to enter into the 1987 agreements by fraud and/or misrepresentation—is conduct arguably prohibited by the NLRA. The Companies do not dispute the conduct that provides the basis for their claims is arguably prohibited by the NLRA, but simply contend the alleged conduct falls within the exception to the NLRB's exclusive jurisdiction pursuant to Section 301. No case in point in this Circuit can be found; caselaw from other circuits is divided.

In support of its position, the UMWA cites the Sixth Circuit Court of Appeals decision in *Serrano v. Jones & Laughlin Steel Co.,* 790 F.2d 1279, 1287 (6th Cir.1986):

"Failure of an employer to bargain in good faith about terms and conditions of employment is not peripheral to the concerns of federal labor law; rather, it strikes at the heart of one of the basic concerns of that law. Unless the fraud claims bring this case within an exception, the *Garmon* preemption doctrine applies."

Similarly, the Eleventh Circuit, in *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1518 (11th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989), addressed state law fraud claims concerning agreements employees entered into with their employer, whereby the employees gave concessions to the employer in return for the employer's agreement not to close the business. The court held,

"In cases where ... the substance of the dispute is the same under both state and federal law, the state law must yield to the NLRB.... [A]llowing state law fraud claims for conduct that would also be a violation of the employer's duty to bargain in good faith would necessarily undermine

the Board's exclusive jurisdiction and may subject the employer to conflicting substantive rules. Further, the state's interest in protecting its citizens from fraud and misrepresentations does not outweigh our concern in protecting the NLRB's jurisdiction from erosion through state regulation. *Serrano*, 790 F.2d at 1287–88. Thus, the balancing of local interests against the regulatory scheme established by Congress compels preemption." (citations omitted).

Likewise, the Seventh Circuit has held claims of fraud or misrepresentation in the creation of a collective bargaining agreement are preempted by NLRB jurisdiction. In *Kolentus v. Avco Corp.*, 798 F.2d 949, 960 (7th Cir.1986), *cert. denied*, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987), employees sued their employer for fraudulently misrepresenting facts relating to the imminent closure of the business. The Court stated:

"Insuring that employers and employees bargain with each other in good faith is of central importance under the [NLRA]. * * * While the forum state undoubtedly has an interest in protecting its citizens from fraudulent misrepresentations, whether in labor negotiations or not, that interest is outweighed here by the NLRB's strong interest in adjudicating this controversy and the danger that the resolution of the dispute under state law and under the NLRA may differ.

Of critical importance in considering the preemptive effect of the NLRA is whether the controversy presented by the state claim is identical to that which could have been presented to the NLRB. It is only in this situation that litigation of a state claim necessarily involves a risk of interference with the unfair labor practice jurisdiction of the NLRB." (citations omitted).

*Accord Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 660–61 (7th Cir.1992).

On the other hand, the Ninth Circuit, in *Rozay's Transfer v. Local Freight Drivers, Local 208*, 850 F.2d 1321, 1326 (9th Cir.1988), *cert. denied*, 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989), the Court of Appeals addressed whether the fraudulent misrepresentation by a union to induce an employer to enter a collective bargaining agreement was preempted by the NLRB's exclusive jurisdiction. The court agreed the union's alleged conduct was arguably an unfair labor practice, but relied on the exception to the NLRB's jurisdiction found with Section 301 of the LMRA, stating:

"LMRA § 301 carves out a broad exception to the NLRB's primary jurisdiction for claims arising out of collective bargaining agreements, whether or not such claims would also be an unfair labor practice under section 8 of the NLRA. In cases involving conduct that is both an unfair labor practice and a violation of a collective bargaining agreement, the NLRB and the district courts have concurrent jurisdiction.... Section 301, moreover, applies not only to suits for breach of a collective bargaining agreement once it is duly formed, but also to suits impugning the existence and validity of a labor agreement, ... including those alleging improper conduct or mistake during the formation of the agreement." *Id.* at 1326.

The Court concludes the facts underlying the Ninth Circuit's holding in *Rozay's* are more closely analogous to the facts of the instant case than those of *Serrano v. Jones & Laughlin Steel Co.*, *LTV*, supra, *Parker v. Connors Steel Co.*, supra, and *Kolentus v. Avco Corp.*, supra. The fraud/misrepresentation claim may be characterized as one for either an unfair labor practice or a violation of the 1987 agreement pursuant to Section 301 of the LMRA. *Rozay's, supra.* Therefore, the Court exercises concurrent jurisdiction with the NLRB, *Hines v. Anchor Motor Freight, Inc.*, supra, *William E. Arnold Co. v. Carpenters District Council of Jacksonville and Vicinity*, supra, and *Richardson v. Kruchko & Fries*, supra.

## B.

■ The UMWA asserts the Companies' claims of fraud, and of mistake and impossibility fail to state claims cognizable under Section 301. The UMWA contends the fraud, and the mistake and impossibility claims are not claims for a *violation* of a collective bargaining agreement, but claims regarding the formation of the agreement.

As such, it argues, those claims fail to assert Section 301 claims.

For support the UMWA cites to *A.T. Massey Coal Co., Inc. v. International Union, United Mine Workers of America*, 799 F.2d 142 (4th Cir.1986), *cert. denied*, 481 U.S. 1033, 107 S.Ct. 1964, 95 L.Ed.2d 536 (1987), where the Court of Appeals held only "breaches" of collective bargaining agreements present cognizable claims under Section 301. In *Massey* the plaintiff employer sought a declaration it was not bound by the collective bargaining agreement at issue. The Court of Appeals held: "[A] plaintiff must allege breach of an existing collective bargaining contract in order to avail itself of jurisdiction under § 301 of the Act." *Id.* at 146.

Although the Court of Appeals has not revisited *Massey*, two district courts in this circuit have followed its reasoning. In *Allied Mechanical Contractors, Inc. v. Industrial Relations Council for Plumbing and Pipe Fitting Industry*, 685 F.Supp. 552, 561 (W.D.N.C.1988) the court cited *Massey* for the proposition that "parties seeking to pursue their labor disputes [under Section 301] in federal district court must allege in their complaints that there has been a breach of contract between an employer and a labor organization representing employees in an industry affecting commerce." And in *Claire Mfg. Co. v. International Ladies Garment Workers' Union*, 667 F.Supp. 230, 231 (D.Md. 1987) the court interpreted *Massey* as holding, "the language of [Section 301] grants jurisdiction for suits only when breaches of a valid bargaining agreement are alleged."

■ The Court believes *Massey* and its few progeny are distinguishable from the instant case. The employers in *Massey* and *Claire* both sought declaratory relief because they claimed they were not signatories or party to the collective bargaining agreements at issue. The allegations there did not involve a "breach" of an existing agreement, but simply that no agreement existed.[5] The Court of Appeals holding is directed at the *existence* of the agreement, not its validity once it exists.[6] Whether or not a collective bargaining agreement *exists*, then, is a question beyond the reach of Section 301 jurisdiction; once such an agreement exists, however, its validity is subject to Section 301 jurisdiction.[7]

---

5. In *Allied Mechanical Contractors, Inc., supra*, the court held it clearly had Section 301 jurisdiction where an employer alleges the union breached the collective bargaining agreement by insisting the employer abide by an arbitration award.

6. In *Massey* the Court of Appeals consolidated two actions, one where the district court held Section 301 jurisdiction unavailable, and the other where the district court found such jurisdiction. The difference between the two actions turned on the *existence* of a collective bargaining agreement:

> "We agree with the district court and hold that a plaintiff must allege a breach of an existing collective bargaining contract in order to avail itself of jurisdiction under § 301 of the Act. Since *Massey sought a declaration that it was not bound* by the 1984 NBCWA or the December 23, 1985 collective bargaining agreement, it did not bring itself under the explicit jurisdictional language of the Act. The later suit brought by the union in the West Virginia district court has no such jurisdictional infirmity since it *seeks a declaration that Massey and its affiliated companies were bound* by an *existing* agreement." (emphasis added). *Id.* at 146.

Thus, it seems the Massey court's holding depends on the *existence* of a collective bargaining agreement. Where one pleads no contract exists, jurisdiction under Section 301 is inappropriate. However, where a collective bargaining agreement is acknowledged to exist, as it is here, and only its validity is questioned, Section 301 jurisdiction obtains.

7. Finding Section 301 jurisdiction when both parties acknowledge the existence of a collective bargaining agreement, but one party nevertheless contests the agreement's validity, comports with the Supreme Court's decision in *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada v. Local 334, United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada*, 452 U.S. 615, 626, 101 S.Ct. 2546, 2552, 69 L.Ed.2d 280 (1981), where it is stated:

> "In discussing the section of the Taft–Hartley Act on unfair labor practices with respect to the employer-union relationship, the House–Senate Conference stated: 'Once parties have made a collective bargaining contract the enforcement of that contract should be left to the usual process of law and not to the National Labor Relations Board.' H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess., 42 (1947) (emphasis added), U.S.Code Cong.Serv.1947, 1147, 1 Leg.Hist., at 546; see *Teamsters v. Lucas Flour*

In the instant case there is no dispute signed agreements exist. Section 301 may be invoked where a "violation" [8] of a collective bargaining agreement occurs. The issue here is whether the 1987 agreements were violated through either 1) fraudulent inducements or misrepresentations, or 2) mistake or impossibility. The Court concludes the Companies, allegations of fraud, mistake and impossibility sufficiently state claims for a "violation" of the 1987 agreements. Thus, the Court concludes it has jurisdiction to resolve those claims pursuant to Section 301.

### C.

The UMWA contends the Companies have failed to state a claims for breach of contract. The UMWA appears to argue a claim for breach of contract must contain an allegation of an affirmative act of breach. The UMWA fails to support its contention with any citation to case or statutory law.

The Court concludes the foregoing contentions are without merit. Breach of contract consists of failure to observe a contractual obligation, whether that failure is active or passive. In this instance, the Companies allege if the Funds are successful in this action, the UMWA will have failed to secure promised reductions in their contributions to the Funds. The allegations, although passive in nature, would constitute a breach of contract if proven. Therefore, the motions to dismiss the breach of contract claims are denied.

### D.

The UMWA asserts the Companies may not present claims for "unjust enrichment" under the facts of this case. It contends unjust enrichment may not be pled where a valid express contract exists. Thus, it argues, because the 1987 agreements are valid express contracts, the Companies may not plead unjust enrichment. On the other hand, the Companies contend the 1987 agreements will be ineffective if the Funds prevail on the first-party actions, and therefore no valid express contracts will be deemed to exist.

It is now beyond cavil that a claim for unjust enrichment may not be founded upon the terms of an express contract. As stated by the Court of Appeals:

> "It is a well-rooted principle of contract law that '[a]n express contract and an implied contract, relating to the same subject matter, can not co-exist.' *Case v. Shephard,* 140 W.Va. 305, 84 S.E.2d 140, 144 (1954); *see also Shanks v. Wilson,* 86 F.Supp. 789, 794 (S.D.W.Va.1949) (holding that no quasi-contractual recovery is possible 'when the parties have clearly and plainly expressed in writing the actual contract between them'). Because 'an action for unjust enrichment is quasi-contractual in nature[, it] may not be brought in the face of an express contract.' *Acorn Structures, Inc. v. Swantz,* 846 F.2d 923, 926 (4th Cir.1988)." *Bright v. QSP, Inc.,* 20 F.3d 1300, 1306 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994).

*See, e.g., National Service Ass'n, Inc. v. Capitol Bankers Life Ins. Co., Inc.,* 832 F.Supp. 227, 233 (N.D.Ill.1993) (interpreting Illinois law); *Chrysler Capitol Corp. v. Century Power Corp.,* 778 F.Supp. 1260, 1272 (S.D.N.Y.1991) (interpreting New York law and holding "when there is a valid contract governing a transaction, a party may not sue for unjust enrichment."). *See generally,* 66 Am.Jur.2d, *Restitution and Implied Contracts* § 59 (1973).

Although the UMWA argues the 1987 agreements are valid express contracts and therefore damages for unjust enrichment are barred, the Court concludes such relief might be grantable if alternatively, as suggested by the Companies, the 1987 agreements are voidable or rescindable for mistake, impossibility or impracticality. If the contract is deemed void or rescinded, there will be no

---

Co., 369 U.S. 95, 101, n. 9, 82 S.Ct. 571, 575, n. 9, 7 L.Ed.2d 593 (1962). (emphasis added and in original).

The Supreme Court went on to state: "Congress intended the federal courts to enjoy wide ranging authority to enforce labor contracts under § 301." *Id.,* 452 U.S. at 627, 101 S.Ct. at 2553, 69 L.Ed.2d at 290.

**8.** *See* Note 3, *supra.*

express contract.[9] *See Chrysler Capitol Corp. v. Century Power Corp., supra,* 778 F.Supp. at 1272 ("If [contract] is void or may be voided for fraudulent inducement, then recovery under a theory of unjust enrichment may be proper. On the other hand, if the fraud allegations are dismissed or determined to be without merit, then unjust enrichment is not a valid theory of recovery." (citations omitted)); *In re LCS Homes, Inc.,* 103 B.R. 736, 748 (Bankr.E.D.Va.1989) ("If, under the facts of a case, a court cannot find a meeting of the minds and thus a contract, a court may apply the equitable concept of unjust enrichment. A court may find a quasi-contract and enforce payment to avoid unjust enrichment." (citations omitted)). *See generally,* 66 Am.Jur.2d, *Restitution and Implied Contracts* § 61 (1973).

The UMWA also contends even if the Court concludes the 1987 agreements were obtained as the result of mistake or impossibility, it would not be unjustly enriched. Its argument appears to suggest the beneficiary of any unjust enrichment would be the Funds, because the Funds will receive the benefit of the 1984 NBCWA. But the unjust enrichment alleged is not the contributions that would then be owing to the Funds; it is the concessions made by Lake Energy to the UMWA in the 1987 agreement in return for reductions in contributions to the Funds. As stated in § 16 of the Third–Party Complaint: "Thunder Mountain [now Lake Energy] agreed to provide various benefits to the UMWA in reliance on the UMWA's commitment to reduce any contributions to the [Funds]. Thunder Mountain has fully performed all of its commitments." The Court concludes the motion to dismiss the unjust enrichment relief must be denied.

**E.**

■ The UMWA argues the Companies' fraud claims cannot lie because they are contingent on this Court finding for the Funds in the overlying actions. The UMWA cites no authority for its argument; the Court concludes this contention is without merit.[10]

■ The UMWA also asserts the fraud claims must be dismissed because they do not state fraud with particularity as required by Rule 9(b) of the *Federal Rules of Civil Procedure.* Rule 9(b) states, in pertinent part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Companies cite to *Estate of Dearing by Dearing v. Dearing,* 646 F.Supp. 903, 914 (S.D.W.Va.1986) (Haden, C.J.), where this

---

9. As Lake Energy states in ¶ 21 of its Third–Party Complaint:

"If the [1987 agreement] is deemed void or rescinded, then Thunder Mountain will have lost the benefit of the [1987 agreement] and the UMWA will have been unjustly enriched at Lake Energy's expense (as a successor to Thunder Mountain). Therefore, Lake Energy is entitled to restitution in an amount up to the amount Lake Energy is obligated to pay to defend plaintiffs' claim and pay any settlement or judgment regarding that claim."

10. The UMWA suggests that for one to argue fraud as an alternative claim is inherently illogical. The Court notes F.R.Civ.P. 18(b) addresses this issue:

"Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to that plaintiff,

without first having obtained a judgment establishing the claim for money."

The Notes of the Advisory Committee on Rules state, in pertinent part, "This rule is inserted to make it clear that in a single action a party should be accorded all the relief to which he is entitled regardless of whether it is legal or equitable or both."

Moreover, numerous instances can be found where courts have permitted fraud claims to be plead in the alternative to a claim for breach of contract. *City of Richmond, Va. v. Madison Management Group, Inc.,* 918 F.2d 438, 446–447 (4th Cir.1990) (applying Virginia law); *Leisure Founders, Inc. v. CUC Intern., Inc.,* 833 F.Supp. 1562, 1572–73 (S.D.Fla.1993) (applying Florida law); *Lifeline Limited No. II v. Connecticut General Life Ins. Co.,* 827 F.Supp. 438, 445 (E.D.Mich.1993) (applying Michigan law); *White v. National Steel Corp.,* 742 F.Supp. 312, 336 (N.D.W.Va.1989), *aff'd. in part, rev'd on other grounds,* 938 F.2d 474 (4th Cir.1990), *cert. denied,* 502 U.S. 974, 112 S.Ct. 454, 116 L.Ed.2d 471 (1991) (applying West Virginia law); *Steven Operating, Inc. v. Home State Sav.,* 105 F.R.D. 7, 9 (S.D.Ohio 1984) (applying Ohio law).

Court discussed the "particularity requirement" of Rule 9(b) as follows:

> "While *Rule* 9(b) may not require allegations as to date, place or time, *see Seville Industrial Machinery Corp. v. Southwest Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), the Plaintiffs should employ a 'means of precision and some measure of substantiation into their allegations of fraud.' *Id.* * * * Of course, a court also must liberally construe a complaint in accordance with the spirit of the notice-pleading procedure of the Federal Rules of Civil Procedure and of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." [11]

It appears, however, the Court of Appeals has concluded a more precise standard of "particularity" need be pled to overcome the Rule 9(b) hurdle than was stated in *Dearing.* In *Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 980 (4th Cir.1990) the Court stated: "[A] complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal on a Rule 12(b)(6) motion." *See Strum v. Exxon Co., USA, a Div. of Exxon Corp.,* 15 F.3d 327, 331 (4th Cir.1994) (where plaintiff pleading fraud does no more than assert defendant never intended to honor contractual obligations, dismissal pursuant to Rule 9(b) is appropriate); *In re Medimmune, Inc.,* 873 F.Supp. 953 (D.Md. 1995) (When fraud is pled, "[p]articularity of pleading is required [pursuant to Rule 9(b) ] with regard to the time, place, speaker and contents of the allegedly false statements, as well as the manner in which the statements are supposedly false and the specific facts which raise an inference of fraud."); *Riley v. Murdock,* 828 F.Supp. 1215, 1225 (E.D.N.C. 1993) ("Although Rule 9(b) does not require the elucidation of every detail of the alleged fraud, it does require more than a bare assertion that such cause of action exists. *Mylan Laboratories, Inc.* [*v. Akzo, N.V.,* 770 F.Supp. [1053,] 1074 [ (D.Md.1991) ]. Specifically, the particulars required to be pled include time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the mis-

representation and what was obtained thereby. *Id.*"). *See generally,* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1296–1300 (2nd ed. 1990).

 At a minimum a party pleading fraud must allege the time, place and nature of the fraud to fall within the parameters of Rule 9(b). *Lasercomb America, Inc. v. Reynolds,* 911 F.2d at 980. The Court concludes the Companies have met the Rule 9(b) standard. Although briefly stated in the complaint, it is clear the time and place of the fraud were the time and place when and where the 1987 agreements were negotiated. The content of the fraud was the alleged misrepresentation by the UMWA to the effect it had the ability to secure reductions in the Companies' contributions owed to the Funds pursuant to the 1984 NBCWA. Thus the motion to dismiss based upon Rule 9(b) is denied.

### III.

Based upon the foregoing, the UMWA's motion to dismiss is **DENIED.**

The Clerk is directed to send a copy of this Order to counsel of record.

---

11. *See also, Clark v. Milam,* 847 F.Supp. 409, 418–19 (S.D.W.Va.1994) (Haden, C.J.).